Michael ELERY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000669–MR.

Supreme Court of Kentucky.

June 21, 2012.

Daniel T. Goyette, Louisville Metro Public Defender, Cicely Jaracz Lambert, Assistant Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, William Bryan Jones, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant Michael Elery was convicted of murder, tampering with physical evidence, and violating a protective order. He was sentenced to life in prison with no possibility of probation or parole. Finding no error requiring reversal, this Court affirms his convictions and sentence.

## I. Background

Appellant was convicted of murdering his girlfriend, Dana McDonald. Before the murder, McDonald and Appellant shared an apartment in Jefferson County, despite the fact that she had obtained a domestic violence order against Appellant.

On the night before the murder, McDonald and Appellant had an argument. The argument resumed the following morning. According to Appellant, while he was in the bedroom, McDonald entered the room carrying a kitchen knife, threatening "to cut [Appellant's] ass up." Appellant later stated to police that he did not believe McDonald would actually hurt him. Nonetheless, he picked up a nearby hammer and struck the top of her head. In the ensuing fight, Appellant hit her again with the hammer. McDonald fell back against the wall but continued to fight back, apparently stabbing herself in the arm in the process. At that point, Appellant wrested the knife from McDonald and stabbed her in the throat two times. After

stabbing McDonald in the throat the second time, Appellant choked her into unconsciousness.

Appellant then wrote a note on an index card stating "I don't know what is wrong with me but I'm killing myself, Mike." He wiped off the knife and replaced the hammer under the sink, placed a bed sheet and dirty clothes over the walls and floor, took McDonald's cellular phone, and locked the apartment as he left.

While driving, he threw McDonald's phone out the window at 10th Street and Market Street. Following discussions with family members about what had just occurred, he threw his own cell phone away, purchased a bottle of liquor and proceeded to Harrison County Hospital in Indiana while drinking the liquor. Upon arrival, he asked that a sheriff be called. The officer answering the call arrested Appellant for public intoxication. Appellant spoke to police in Indiana, including a Louisville Police Detective, and confessed to killing McDonald. He was transported back to Louisville, where he spoke with Louisville Police officers at length about the death of McDonald. Both interviews were recorded.

Appellant was tried in Jefferson Circuit Court. He was convicted of murder, tampering with physical evidence, and violating a protective order. Though the Commonwealth sought the death penalty, Appellant was instead sentenced to life in prison without benefit of probation or parole. He thus appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

Appellant makes eight arguments on appeal.[1] First, he asserts that the jury was impermissibly allowed to hear evidence of an uncharged crime. Second, he claims that it was error for the trial judge to include extreme emotional disturbance as an element of the manslaughter offense in the jury instructions. Third, he claims that the trial judge failed to adequately inform the jury about the role of reasonable doubt regarding the absence of extreme emotional disturbance in a murder conviction. Fourth, he claims the exclusion of a portable breathalyzer test was an error which resulted in prejudice. Fifth, he claims that the trial judge improperly struck a juror for cause, which resulted in the Commonwealth effectively receiving an additional peremptory challenge. Sixth, he claims that overly emotional victim impact testimony from McDonald's cousin was impermissibly admitted. Seventh, he claims the introduction of evidence that the victim had never been charged with a crime constituted manifest injustice. And eighth, he argues that he is entitled to relief based on the theory of cumulative error. These arguments will be addressed in turn below.

### A. Incomplete Redaction of Appellant's Statements to Police.

■ Appellant first argues that statements made to the police concerning another crime were improperly admitted at trial. Appellant was interrogated by police in both Indiana and Louisville. Versions of recordings of these interrogations were played for the jury, which also looked

---

1. Appellant's brief includes another claim of error—that the jury failed to make a written finding of the statutory aggravator required to impose the aggravated sentence of life imprisonment without probation or parole. As noted in the Commonwealth's brief and admitted in the reply brief, however, this claim was based on appellate counsel's misapprehension of the record. Such written findings were made. As such, Appellant has dropped this issue.

at transcripts of the interrogations at the same time.

During the interrogations, in addition to confessing to killing his girlfriend, Appellant stated that he had killed another woman who had apparently lived in McDonald's living room and been a friend of McDonald. According to his statements to police in Indiana and Louisville, he beat the other woman on the head with the hammer after his altercation with McDonald, tied her up using clothesline rope, and eventually drowned her at Shawnee Park. However, Louisville police never found the body, nor was a missing persons report recorded matching the description Appellant made of this second individual. Appellant was not charged in the death of the other woman. Indeed, it appears that this additional crime may never have occurred.

Prior to trial, defense counsel moved to suppress Appellant's statements to police regarding this alleged incident on KRE 404(b), RCr 9.60, and constitutional due process grounds. The Commonwealth argued in favor of admissibility, but the trial court seemed to favor excluding the evidence. As a result, the Commonwealth agreed not to introduce the evidence. The Commonwealth then spent a lunch break redacting the recordings and transcripts, and a redacted version of both the Indiana and Kentucky statements was played to the jury. Jury members also received a redacted transcript of the statements to follow along while listening. Before playing the statements, the court instructed the jurors that the recordings were the evidence and the transcripts were only to assist them in following the recorded inter-

rogations, were not evidence, and would not be taken back to the jury room during deliberations.

Despite the redactions, some statements touching on the other "crime" were played for the jury, and others were left in the transcripts. These statements are the subject of the present challenge. Appellant argues that they were erroneously admitted and improperly influenced the jury.

■ Appellant's motion in limine sufficiently preserved this issue for review. *See* KRE 103(d) ("A motion in limine resolved by order of record is sufficient to preserve error for appellate review"); *see also Lanham v. Commonwealth,* 171 S.W.3d 14, 22 (Ky.2005).

The first question is whether admission of statements referring to the other crime, whether it occurred or not, was error. As this is evidence of an uncharged, albeit possibly imagined, crime, it falls under KRE 404(b), which generally prohibits the admission of such evidence.[2] The Commonwealth does not claim that the evidence was admissible under an exception to KRE 404(b). Indeed, the Commonwealth effectively conceded that the evidence was inadmissible by consenting to redacting the transcript. Rather than arguing a KRE 404(b) exception, the Commonwealth argues on appeal that it is not clear whether the unredacted statements actually refer to another crime. If the statements did refer to another "crime," then they were inadmissible under KRE 404(b). Rather than engaging in an extended analysis and parsing of the statements to decide whether they did refer to another crime (and thus fall under KRE

---

**2.** Appellant also claims that the statements in question violated RCr 9.60, which states that a "confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied by other proof that such an offense was committed." However, the Appellant was not charged with the second murder nor was his full confession of the second killing submitted to the jury. Consequently this rule has not been implicated.

404(b)),[3] the Court reads the Commonwealth's argument as essentially that admission of the statements was harmless error. In fact, the Commonwealth also expressly argues that admission of the statements was harmless error under RCr 9.24.

Criminal Rule 9.24 states that "no error in either the admission or the exclusion of evidence" will warrant reversal unless the "denial of such relief would be inconsistent with substantial justice." The harmless error inquiry "is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (alteration in original).[4]

The statements at issue are described in detail below. When analyzed under the *Winstead* standard, it is clear that nothing more than harmless error occurred when the jury was exposed to this evidence.

The first statement challenged by the Appellant was heard by the jury on the recording of the first statement made in Indiana. Near the end of the Indiana interview, Appellant said, "I don't know who this other girl is. I just know that she'd just interfere and I was furious. All I remember is calling my momma while I was dropping her off. I know where I put

her at. That's all I remember." This statement was redacted from the transcript the jury saw, but it was left in the recording played in court and admitted into evidence.

The statement was harmless. Although a juror may have wondered who the "other girl" was, and what Appellant meant by "dropping her off," there is no indication that Appellant caused harm to her. There is no real prejudice from the statement, as it would take substantial imagination, rather than reasonable inference, to reach the conclusion that Appellant harmed her. At most, the evidence could have resulted in some minor confusion of the jury.

Appellant also complains of a statement that was left in the transcript given to the jury but removed from the recordings. The transcript of the Indiana interview included the following statement by Detective Smith in the context of a discussion about the location of Appellant's car: "Well, I wanna make sure that, that the body's not in that car still." The Appellant argues that this hints strongly that there was another crime, as there was no real question that McDonald's body was left at the apartment. But Appellant responded to this statement with, "Heck no, no Dana's, Dana's is in the hallway in her house in, by the washer and dryer room. Then I called my mom right after I got done, man." Importantly, this statement was not included in the recording played

---

3. In the context of the unredacted interviews, it is clear that the statements do refer to another crime, imagined or not.

4. The Commonwealth incorrectly describes the harmless error standard as whether "upon consideration of the whole case it ... appear[s] that there is a substantial possibility that the result would have been any different." *Gosser v. Commonwealth*, 31 S.W.3d 897, 903 (Ky.2000). This is a substantially

different standard than that described in *Winstead*. *See Edmonds v. Commonwealth*, 2007–SC–000350–MR, 2009 WL 4263142 (Ky. Nov. 25, 2009) (unpublished op.) (Noble, J., dissenting) (describing the competing and inconsistent standards for harmless error review). The result test described in *Gosser* has been supplanted by the effect-on-the-verdict test of *Winstead*.

for the jury, which was the actual evidence.

In another statement heard on the Indiana recording and included in the transcript,[5] the jury heard the following interaction:

> Appellant: (inaudible) knockin' on the door. And then that's—
>
> Detective: Well go ahead. You can tell, you can tell us.
>
> Appellant: She ended up (inaudible). She ended up (inaudible) like you know. But I mean after I, I, when I seen the blood was actually coming from Dana's head.

Immediately before this exchange, a portion of the Appellant's claims about the other woman he claimed to have killed was removed. With that context, it is clear he was referring to that woman as the person who knocked on the door. Without that context, it does not support a belief that the other individual was killed. Again, the Court sees no prejudice from this statement.

The Appellant claims this exchange was worsened by his "follow-up line" of "hold on I'll be out there," which he claims was included in the transcript (but not the recording). He argues that this statement showed that he stood to open the door, which again invited the jury to conclude that another person was present. But this "follow-up line" does not appear in the redacted transcript, at least not where the Appellant claims it appears. In fact, this Court has not been able to find the follow-up line even in the unredacted transcript of the Indiana interrogation, nor can it be heard in the recording that was played for the jury. Appellant bears the burden of showing prejudicial error. Such an error will not be presumed from what appears to this Court to be a silent record.

The Appellant complains that the redacted transcript then shows the detective asking Appellant, "And did you just get up and open the door?" First, this mischaracterizes the order of the interrogation. This question appears several pages before the exchange described in the preceding two paragraphs.[6] Second, it is a remnant of a section about the other woman that was removed from the transcript and the recording. This question appeared only on the transcript and had been removed from the recording played for the jury. Again, this question does not show that the person was murdered.

A few moments later during the interview, the detective asked, seemingly out of the blue, "Where are those scissors now? Do you know?" Appellant argues that because scissors did not contribute to the death of McDonald, the jury inferred that he used the scissors to commit another crime. But without any additional statements about the scissors and the role they may have played, it is extremely unlikely the jurors would have developed this conclusion on their own.

Finally, on the recording (and, allegedly, in the transcript[7]) of the interrogation in Kentucky, the Appellant made several references to being at Shawnee Park, which is where he claimed to have killed the other woman. Specifically, while describ-

---

5. The Commonwealth incorrectly claims this statement was not included in the redacted transcript. While the page numbers of the transcript cited in Appellant's brief (pages 19–20) do not include the language, it does appear on pages 15–16.

6. Specifically, it appears on page 11 of the redacted transcript.

7. No redacted transcript of the Kentucky interrogation was included in the appellate record, so this claim cannot be confirmed.

ing his flight from the apartment, the following exchange took place:

Appellant: And then when I got to the park—

Detective: Which park did you go to?

Appellant: Shawnee Park.

Detective: Ok.

Appellant: And I jumped straight on the highway and I went. When I got up to the sign it said Lexington, St. Louis, and I turned to St. Louis. I went up that way. I didn't even know where I was going to.

In the original interview, Appellant spent several minutes after the detective said "ok" talking about killing the other woman before talking about getting on the highway. That material was redacted from the recording and was not played for the jury. A few minutes later, when describing throwing away a cell phone, the Appellant said, "When I left the park, I figured out which way I was gonna go, that's when I threw out the other cell phone which y'all just found."

Appellant argues that because McDonald was left in the apartment, the jury would conclude that his trip to Shawnee Park implicated him in an additional crime. However, nothing in that statement would allow for such a conclusion by the jury. Such an inference is only apparent to someone with knowledge of the redacted portions of the interview. All a reasonable juror would conclude is that Appellant visited the park after the crime, and there is no indication to support an inference that there was a more sinister purpose for this detour.

The importance of these statements is not apparent without knowledge of the more explicit statements about the other woman. While the jurors may have been confused by these statements, as they could seem out of place in the interroga-

tion without their original context, any confusion would have been minor. And none of the statements is explicit enough about the other claimed crime to have created real prejudice to the Appellant.

The Appellant argues generally that because some technically inadmissible evidence was presented to the jury, reversal is required. But the cases cited by the Appellant do not support such an extreme and technical view of evidentiary error. They all turn on independent investigation by the jury, failure to consider the harmless error rule, or an error that did not require reversal. We conclude that these cases do not require reversal here, especially in light of the harmless error rule.

For example, the Appellant cites *Chestnut v. Commonwealth*, 250 S.W.3d 288, 302–03 (Ky.2008), in which the jury examined during deliberations a pawnshop receipt that showed the defendant had pawned jewelry connected to a burglary. The receipt also disclosed that the defendant on a different date had pawned other jewelry not connected to the burglary at issue. *Id.* at 303. Although the trial judge had ordered the portion of the receipt relating to the non-relevant jewelry redacted, it was not removed before it was taken into the deliberation room. *Id.* This Court held that it was error for the jury to be allowed to consider the non-relevant part of the pawn ticket. *Id.*

Even though the error in *Chestnut* also involves improper redaction, it does not require reversal in this case. First, the error in *Chestnut* was much clearer: there is no doubt that the improper evidence in that case was of another crime, whereas that conclusion is not true here. Second, the error in *Chestnut* did not require reversal and was not subjected to harmless error review. The pawn-ticket error was an additional one addressed after the Court had decided to reverse for another

reason; it was addressed only because the additional error was likely to recur on retrial. *Id.* at 299. *Chestnut* does not remove the requirement that this Court evaluate an error for harmlessness before reversing.

Ultimately, the harmless error rule does not allow reversal for the unredacted portions of the interviews with police. None of the statements raised by the Appellant could have had a substantial effect on the jury. There is little to no risk that the jury would have considered this evidence, inferred that another crime occurred, and convicted Appellant. While these statements should have been redacted from both the recording and the transcript, their inclusion amounted to harmless error.

**B. Jury Instructions About Extreme Emotional Disturbance.**

■ At the conclusion of the trial, the judge decided to instruct the jury on murder and, as a lesser-included offense, manslaughter in the first degree. Appellant tendered the following instruction outlining first-degree manslaughter as a lesser-included offense of murder:

### MANSLAUGHTER IN THE FIRST DEGREE

You will find Michael Elery guilty under this instruction if and only if, [sic] you believe from the evidence beyond a reasonable doubt all of the following:

That in the county on the 20th day of February, 2009, and with intent to cause the death of Dana McDonald under circumstances which did not constitute murder because Michael Elery was acting under the influence of extreme emotional disturbance as defined in Instruction No. ＿＿ (below)

**OR**

A. That in this county on the 20th day of February, 2009, he killed Dana McDonald by beating her, stabbing her, or choking her;
AND

B. That in doing so he did not intend to kill Dana McDonald, but intended to cause serious physical injury to her;
AND

C. That he was not privileged to act in self-protection.

The trial court declined to give this instruction and instead instructed the jury on murder and first-degree manslaughter as follows:

### INSTRUCTION NO. 1

### MURDER

You will find the defendant, Michael Elery, guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

(A) That in Jefferson County, on or about the 20th day of February, 2009, he killed Dana McDonald by stabbing her AND/OR choking her AND/OR strangling her AND/OR striking her with a hammer;
AND

(B) That in so doing, he caused the death of Dana McDonald intentionally;
AND

(C) That at the time he did so, the defendant was not acting under the influence of extreme emotional disturbance.

Once you have decided whether the defendant is guilty or not guilty under this instruction, you shall complete Verdict Form No. 1.

### INSTRUCTION NO. 2

*MANSLAUGHTER IN THE FIRST DEGREE*

If you did not find the defendant guilty under Instruction No. 1, you will find the defendant, Michael A. Elery, guilty of Manslaughter in the First Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

(A) That in Jefferson County, on or about the 20th day of February, 2009, he killed Dana McDonald by stabbing her AND/OR choking her AND/OR strangling her AND/OR striking her with a hammer;

AND

(B) That in so doing, he caused the death of Dana McDonald intentionally;

AND

(C) That at the time he did so, the defendant was acting under the influence of extreme emotional disturbance.

Once you have decided whether the defendant is guilty or not guilty under this instruction, you shall complete Verdict Form No. 2.

When the trial court said it intended to use these instructions, Appellant objected, noting that while parts (A) and (B) were appropriate, part (C), which made extreme emotional disturbance an element of manslaughter, was not appropriate. On appeal, he argues that the trial court erred in including the existence of extreme emotional disturbance as an element of manslaughter.

■ Before turning to the merits of Appellant's claim, there is some question whether he preserved this error for appellate review. He tendered an instruction to the trial court, which is ordinarily sufficient to preserve an instruction error for review. *See* RCR 9.54; *Holland v. Commonwealth*, 114 S.W.3d 792, 803 (Ky.2003). But Appellant's tendered instruction made the same error about which he now complains. His tendered instruction allowed the jury to find him guilty if and only if it believed beyond a reasonable doubt that he was acting under the influence of extreme emotional disturbance. Though his instruction described this as why the jury would not have found him guilty of murder, the conditioning of the finding on "evidence beyond a reasonable doubt" required the same finding as the instruction ultimately used by the trial court. No doubt, Appellant's confusion about what should go in the instruction was part of a persistent confusion among the bench and bar about how to instruct on first-degree manslaughter, which is described in more detail in the next issue below.

■ But Appellant also separately objected to the trial court's instruction and complained that it required an improper finding—the existence of EED—before the jury could find him guilty of manslaughter instead of murder. The gravamen of the instructional-error preservation requirement is presentation of the party's position "fairly and adequately" to the trial judge. RCr 9.54(2). While this is normally done by tendering an instruction, it may also be done by an objection "stating specifically the matter to which the party objects and the ground or grounds of the objection." *Id.* Having made such an objection in this case, Appellant sufficiently preserved the error for this Court's review. However, after examining the instructions, if there was an error, it was harmless to the Appellant.

We have in the past held that because "the murder and manslaughter statutes go hand in hand" and "the absence or presence of EED is an element of both [the murder and manslaughter] statutes," it is

not proper to include an element related to that mental state in both murder and manslaughter instructions. *Haight v. Commonwealth*, 938 S.W.2d 243, 248 (Ky.1996). More recently, however, we have held that the type of instructions used by the trial court in this case—requiring a finding of the *lack* of EED beyond a reasonable doubt to convict of murder and the finding of the existence of EED beyond a reasonable doubt to convict of the lesser-included offense of manslaughter—is error. *See Baze v. Commonwealth*, 965 S.W.2d 817, 823 (Ky.1997) ("However, it was error to require the Commonwealth to prove the presence of extreme emotional disturbance as an element of the offense of first-degree manslaughter."). As explained in *Baze*:

> The inclusion of this additional element required the Commonwealth to prove the absence of extreme emotional disturbance beyond a reasonable doubt in order to obtain a conviction of murder, . . . and to prove the presence of extreme emotional disturbance beyond a reasonable doubt in order to obtain a conviction of first-degree manslaughter. Theoretically, the jury could have found by a preponderance of the evidence, but not beyond a reasonable doubt, that Baze was or was not acting under the influence of extreme emotional disturbance. If so, the jury would have been required to acquit Baze of both charges.

*Id.* So technically, Appellant is correct that the trial court erred in giving this instruction.

■ But, as noted in *Baze*, such an error is not prejudicial to the defendant and must be harmless error. The error benefits the defendant because it requires the Commonwealth to prove beyond a reasonable doubt the absence of extreme emotional disturbance, and to prove beyond a reasonable doubt the absence of extreme emotional disturbance to convict the defendant of manslaughter. "Placing a higher burden of proof on the Commonwealth than is required by law is an error favorable to the defendant." *Id.* And "[e]rrors which inure to the benefit of the defendant are not prejudicial." *Id.*

The Appellant implies that since *Baze*, this Court held that reversal is required for any error related to lesser-included offenses. For example, he quotes language stating that "since a lesser included offense is, in fact and principle, a defense against the higher charge, an erroneous instruction on a lesser included offense can be grounds for reversal even if the defendant was convicted of the higher offense." *Love v. Commonwealth*, 55 S.W.3d 816, 826 (Ky.2001) (internal citations omitted). But this language does not require reversal for every error; rather, it says only that an erroneous instruction *can* require reversal.

Appellant argues, however, that the erroneous manslaughter instruction was tantamount to no lesser-included offense instruction at all. He notes that during its deliberations, the jury sent out a note asking, "What is the difference between manslaughter 1 and manslaughter 2? Is there a murder 2nd degree?" The judge responded with a written note stating, "I have instructed you on the only counts that you may consider under Kentucky law." Appellant would have the Court read a great deal into the jury's questions and infer that it wanted to convict Appellant of an offense less than murder, but could not under the given instructions because of the requirement that it find the existence of EED.

■ This take on the circumstances, however, is both legally unfounded and too cynical a view of jury behavior. First, a jury's questions during deliberations, like a straw vote, are not legally significant. *Cf. Blueford v. Arkansas*, —— U.S. ——,

132 S.Ct. 2044, 2050–53, 130 L.Ed.2d 624 (2012) (holding that a jury's tentative vote during deliberations to acquit on a higher charge was not binding because not reduced to a verdict). Only the jury's verdict controls. *Id.* Such questions are simply evidence that the jury undertook seriously its duty to consider the law and evidence.

Second, Appellant's view would require this Court to assume the jury was unwilling to render a manslaughter verdict for lack of evidence of the existence of EED, yet chose to render a murder verdict despite grave concerns about the requirement that the Commonwealth prove a lack of EED. Surely, if the jury was willing to convict Appellant of the highest offense, despite concerns about the evidence, it would have been willing to choose the lesser offense, despite similar concerns, if it was truly convinced that a lesser crime was more appropriate.

Ultimately, this is not a case where the jury was instructed as to no lesser-included offenses. Failure to give any lesser-included offense instruction would have been reversible error in this case, as the failure forces upon the jury the false dilemma of choosing either to convict on the higher offense or to acquit. *See Commonwealth v. Swift*, 237 S.W.3d 193, 196 (Ky. 2007). But the danger described in *Swift* did not happen here, as the trial court did instruct on manslaughter as a lesser-included offense. And the erroneous instruction was not the equivalent of no instruction at all.

By requiring the Commonwealth to prove the existence or absence of extreme emotional disturbance, the court placed a substantial burden on the Commonwealth. If the Commonwealth failed to prove the requirements of a murder conviction, the manslaughter charges formed a backstop. If there was some doubt as to the existence of extreme emotional disturbance, the jury would have acquitted Appellant of both charges, or at least chosen the lesser crime when there is doubt as to both. Any error here was prejudicial only to the Commonwealth, not the Appellant.

## C. Murder and Reasonable Doubt.

■ Appellant also argues that the trial judge failed to properly explain the application of the reasonable doubt standard when a jury must choose between murder and manslaughter charges. The trial judge offered the following standard instruction on the presumption of innocence and reasonable doubt:

> The law presumes a defendant to be innocent of a crime and the indictment shall not be considered as evidence or as having any weight against him. You shall find the defendant not guilty unless you are satisfied from the evidence alone and beyond a reasonable doubt that he is guilty. If upon the whole case you have reasonable doubt that he is guilty, you shall find him not guilty. The defendant is not compelled to testify, and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way.

Appellant claims that by proffering the first-degree manslaughter instruction quoted above, he requested an explicit instruction on the relationship between murder and first-degree manslaughter like that discussed in *Gall v. Commonwealth*, 607 S.W.2d 97, 110 (Ky.1980), *Commonwealth v. Hager*, 41 S.W.3d 828, 831–32 (Ky.2001), and *Sherroan v. Commonwealth*, 142 S.W.3d 7, 23 (Ky.2004).

Though Appellant's claim is not entirely clear, it appears that he is complaining that he did not receive an independent instruction detailing the relationship between murder and manslaughter when EED is at issue like that in Justice Coo-

per's and Mr. Cetrulo's criminal volume of *Kentucky Instructions to Juries.* They offer the following instruction as a way to guide the jury's decision between murder and manslaughter under EED:

> If you believe from the evidence beyond a reasonable doubt that the Defendant would be guilty of intentional [Murder] ... under Instruction No. ____, except that you have reasonable doubt as to whether at the time he [killed] _____ (victim) ..., he was or was not acting under the influence of extreme emotional disturbance, you shall not find the Defendant guilty under Instruction No. ____, but shall find him guilty of [First–Degree Manslaughter] ... under Instruction No. ____.

1 William S. Cooper & Donald P. Cetrulo, *Kentucky Instructions to Juries, Criminal* § 2.03 (5th ed.2006). Under this instruction, if EED is at issue and a jury has a reasonable doubt about the lack of EED, because it has before it enough convincing evidence of the existence of EED, then the proper verdict is first-degree manslaughter. This instruction thus properly reflects the state of the law, which places an EED element—specifically a lack of EED—only under the offense of murder, and not under manslaughter.

Appellant, however, did not request such an instruction. He asked for language to be added directly to the manslaughter instruction itself, which as detailed above would have been an erroneous instruction. An independent instruction appended to the presumption-of-innocence and reasonable-doubt instruction would have a different effect, as it would not create a conflict between instructions of the type described above. Rather, such an instruction would independently explain the relationship between the murder and manslaughter instructions.

■ This Court had held that "such an instruction is required *if requested* and warranted by the evidence." *Sherroan,* 142 S.W.3d at 23 (Ky.2004) (emphasis added). But, like in *Sherroan,* "this issue was not preserved for appeal because Appellant did not object to the instructions on these grounds, make an appropriate motion, or tender such an instruction." *Id.* Moreover, this Court cannot say the lack of such an instruction was palpable error under RCr 10.26 because the murder instruction under which Appellant was found guilty required the jury to find beyond a reasonable doubt the absence of EED. *See id.* ("Since the murder instructions directed the jurors not to convict Appellant of murder unless they believed beyond a reasonable doubt that he was not acting under EED, the failure to include the additional admonition in the presumption of innocence/reasonable doubt instruction did not adversely affect Appellant's substantial rights.").

■ This issue continues to show up in cases, despite its resolution in our case law. Clearly confusion persists among the bench and bar as to how to properly instruct on murder and its lesser-included offenses when EED is at issue. The best way to address the issue is to include EED in the murder instruction and make no mention of it in the manslaughter instruction. Rather than making the manslaughter instruction relate back to the murder instruction with a second reference to EED, the usual transition—"if you did not find the defendant guilty under Instruction No. ___, you will find the defendant ..."— is sufficient. Such instructions are adequate to describe the law on the subject.

Of course, additional clarity is available, even within the confines of the bare-bones approach to instructions. If a defendant has concern about the relationship between the instructions, especially with re-

gard to the burden of proof, it can be addressed in the stand-alone instruction about the presumption of innocence and the burden of proof as described by Justice Cooper and Mr. Cetrulo. *See* Cooper & Cetrulo, *supra,* § 2.03.

No doubt, some of the confusion about whether such an instruction is desirable or even permissible exists because this Court has said at times that under the post–1978 version of RCr 9.56, such an instruction is unnecessary and should be avoided. *See Butts v. Commonwealth,* 953 S.W.2d 943, 945–46 (Ky.1997); *Carwile v. Commonwealth,* 656 S.W.2d 722, 724 (Ky.1983). More recently, however, this Court has approved of such an instruction, again going so far as to say that "such an instruction is *required* if requested and if warranted by the evidence." *Sherroan,* 142 S.W.3d at 23 (emphasis added); *see also Hager,* 41 S.W.3d at 831–32; *Holbrook v. Commonwealth,* 813 S.W.2d 811, 815 (Ky. 1991) (jury should be given separate instruction and definition for EED), *overruled on other grounds by Elliott v. Commonwealth,* 976 S.W.2d 416 (Ky.1998). Despite these cases approving the instruction, *Butts'* and *Carwile*'s proclamation that such an instruction should be avoided is still cited as the law. Presumably, this is because no published case has noted the apparent conflict between the two lines of cases.

■ Going forward, this Court emphasizes to the bench and bar that while such an independent instruction is not required, *Butts,* 953 S.W.2d at 946, it is available upon request if supported by the evidence, *Sherroan,* 142 S.W.3d at 23. The bench and bar is admonished only to be careful and that any "instruction on reasonable doubt as to the degree of the offense ... be given correctly." *Butts,* 953 S.W.2d at 946.

**D. Exclusion of Portable Breath Analysis Results.**

■ Appellant argues that the trial court erred in barring the admission of the results of a portable breathalyzer test (PBT) administered when he first began to speak to the police outside of the hospital in Indiana. The result showed Appellant's blood alcohol concentration at that time was 0.283% (or 3.5 times the legal DUI limit in Kentucky). Appellant sought to introduce this evidence to show he had been extremely intoxicated at the time he confessed to the crimes.

Before trial, the Commonwealth moved to prohibit the introduction of this evidence. The trial court ruled that the test results were inadmissible under KRS 189A.104, which provides:

(1) The only alcohol or substance testing that is subject to refusal or enhancement of penalties provided for in this chapter is:

 a. Breath analysis testing by a machine installed, tested, and maintained by the Commonwealth for that specific purpose or detention facility;

 b. Blood or urine testing at the request of the officer at a police station, detention facility, or medical facility; or

 c. Combination of tests required in paragraphs (a) or (b) of this subsection.

(2) The results of any breath analysis by an instrument other than one specified in subsection (1) of this section shall be inadmissible in court.

The Commonwealth does not claim that the trial court did not err, and admits that the Court of Appeals has decided twice that KRS 189A.104(2) applies only in DUI prosecutions and does not bar admission of PBT evidence in other types of cases. In-

stead of claiming no error, the Commonwealth simply argues that Appellant suffered no prejudice from the error.

Nevertheless, before turning to the harmless error rule, RCr 9.24, we must first determine whether the trial court erred. Two Court of Appeals cases have analyzed the applicability of this statute outside the context of a DUI trial. *See Greene v. Commonwealth,* 244 S.W.3d 128 (Ky.App.2008); *Stump v. Commonwealth,* 289 S.W.3d 213 (Ky.App.2009), *overruled on other grounds by Crouch v. Com.,* 323 S.W.3d 668 (Ky.2010).

In *Greene,* the court looked at whether PBT evidence was admissible in a suppression hearing to show that the officer had probable cause to arrest the defendant. The court read the statute as applying only "for enhancement of penalties or when considering the punishment for refusing to submit to a breath test." *Greene,* 244 S.W.3d at 134. Thus, while the results of the test of breath by a stationary breath analysis machine, blood or urine were admissible in such proceedings, a PBT was not. But outside that context, such as for the purpose of establishing probable cause for an arrest, the court held that "a trial court may consider the pass/fail determination of the PBT." *Id.*

Later, in *Stump,* the court again read the statute as applying only when considering penalty enhancements or a refusal to submit to a PBT examination. *Stump,* 289 S.W.3d at 215–16. Thus, the court held that the statute did not bar the defendant

from introducing as part of his defense the results of the PBT, which indicated that at the time of his arrest his blood alcohol concentration was below the legal limit. *Id.* In reaching this conclusion, the court relied in part on the statute's title: "Alcohol or substance testing subject to refusal or enhancement of penalties under KRS Chapter 189A." The court also sought to avoid the question of whether the statute unconstitutionally infringed on the defendant's due process right to present a defense. *Id.* at 215.

This Court agrees with the Court of Appeals' reading of KRS 189A.104, at least in the context of a non-DUI criminal case in which the defendant seeks to admit the results of a PBT as part of his defense. The statute is designed to limit the Commonwealth's proof in DUI cases, so as to require proof by the best tests available, not to limit a defendant's proof in any criminal case in which alcohol may be a factor in his defense. By limiting that statute to such cases,[8] and thus allowing a defendant to introduce evidence of PBT results, assuming the Rules of Evidence would otherwise allow it,[9] we avoid any concern about the constitutionality of the statute. That alone would require us to read the statute in such limited fashion, so long as the reading is a reasonable one. *See Martin v. Commonwealth,* 96 S.W.3d 38, 54 (Ky.2003) ("When a ... court is dealing with a ... statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional prob-

8. This is not to say that the Court of Appeals was entirely correct that the statute applies *only* when a refusal or enhancement is at issue. It is possible that the statute, while limited, applies to all DUI prosecutions, not just those involving an enhancement or refusal to test. However, we need not reach that ultimate question in this case, as this case was not a DUI prosecution of any type.

9. For example, as scientific evidence, a PBT result may be required to satisfy KRE 702, which we have read as incorporating the requirements of *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

lems, if the statute is subject to such a limiting construction." (quoting *New York v. Ferber*, 458 U.S. 747, 769 n. 24, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982))); *Gomez v. United States*, 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question."); *see also Dawson v. Birenbaum*, 968 S.W.2d 663, 666 (Ky.1998).

 Thus, we conclude that the statute's bar on the admission of PBT results in some circumstance does not bar a defendant who seeks to admit that result as part of a defense in a non-DUI prosecution. Appellant was not charged with an offense under KRS Chapter 189A, but instead sought to introduce the evidence for the purposes of mitigating the impact of his statements to the Indiana police. The evidence seems otherwise admissible, being relevant to the question whether the Appellant's confession was reliable, and sufficiently (if minimally) probative of that fact as to not be outweighed by any prejudice to the Commonwealth. The exclusion of this evidence was therefore error.

 Such an error, however, does not automatically require reversal. Whether to reverse because the trial court erroneously excluded evidence is subject to review under the harmless error standard. *See* RCr 9.24.

After reviewing the proposed proof, this Court concludes that the error was harmless. Admittedly, the PBT results may have explained to the jury some of Appellant's statements to police in Indiana. But those statements were consistent with those made later to the police in Kentucky, when Appellant would have been less intoxicated if at all. Also, the evidence found at the crime scene corroborated both statements.

More importantly, the jury heard in Appellant's statements that he drank a bottle of liquor after leaving the crime scene and had been arrested in Indiana for public intoxication, and that he had a drinking problem and a previous DUI conviction. The recording itself was very good evidence of whether Appellant was so intoxicated as to undermine confidence in his confession. For example, the jury could have heard him slurring his words or giving garbled responses to questions. This Court thus concludes that the exclusion of the PBT evidence was harmless error.

### E. Juror Issue.

 Appellant further argues that the trial judge erred in granting the Commonwealth's motion to strike for cause Juror 252899.

During the individual voir dire proceedings, Juror 252899 stated that he could consider the full range of penalties but also stated repeatedly that choosing the death penalty would be difficult. He ultimately stated that he could vote for the death penalty under appropriate circumstances. As voir dire progressed, it emerged that the juror was familiar with the lead detective who investigated the case in Kentucky, Detective Smith, and knew the detective's family "pretty well." Juror 252899 worked as a recreation minister at a local church, and following a phone call to his church, he confirmed that Detective Smith attended his church. After further inquiry was made into the relationship and the effect it might have on Juror 252899's impartial decision making, he stated, "I might have a little bit more feeling that what he's telling me I would believe is true." He did not "know for 100%" that he would not be influenced by his acquaintance with Detective Smith. Finally, the trial judge noticed that as Juror 252899 left the courtroom, he had tapped Detec-

tive Smith on the shoulder with a magazine he had in hand.

In light of the acquaintance between Juror 252899 and Detective Smith and the juror's equivocation on the death penalty, the Commonwealth moved to strike the juror for cause. While the trial judge struggled with the issue, he stated that he had been persuaded that the relationship was sufficient to strike for cause in part because of the juror's parting action showing some familiarity. As a result, he excused the juror for cause.

Appellant argues that these grounds were insufficient to strike the juror. While it is questionable whether a defendant can even properly complain about the striking of a single juror for cause absent proof of discriminatory animus or that the strike was based only on certain aspects of the juror's view on capital punishment, we need not answer that question as the trial judge did not err in this case.

Rule of Criminal Procedure 9.36 states that "when there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict . . . that juror shall be excused." On appeal, "[l]ong-standing Kentucky law has held that a trial court's decision on whether to strike a juror for cause must be reviewed for abuse of discretion." *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky.2007).

■ The decision to strike Juror 252899 does not meet this abuse of discretion standard. While the juror was relatively confident he could remain impartial, he was not unequivocal about his ability to be unaffected by his relationship with the detective. Moreover, his subsequent action of touching the detective put any assertions of impartiality in greater doubt. As noted in *Shane*, "subsequent comments or demeanor" can negate statements of an asserted ability to remain impartial. *Id.* In this instance, when the juror touched

Detective Smith on the shoulder as he left the courtroom, he showed a level of personal acquaintance that the court could reasonably conclude would affect his impartiality, even if only on an unconscious level, in spite of his previous assertions.

Appellant cites several cases where we have held it was not an abuse of discretion for a trial court *not* to excuse a juror for cause in situations where the social or work relationship between the juror and a witness was not particularly close. *See, e.g., Sholler v. Commonwealth*, 969 S.W.2d 706 (Ky.1998) (juror worked at same hospital as witness and knew prosecutor socially); *Copley v. Commonwealth*, 854 S.W.2d 748 (Ky.1993) (work relationship). All these cases suggest is that had the trial court reached the opposite conclusion in this case—and had not excused the juror—the decision would not have been error. Just because it was not error to grant the challenges in those cases does not mean the inverse is true here. Much of the point of allowing a trial judge discretion in this type of decision making is to recognize that there may be more than one permissible decision. In a case like this, where the decision is a classic "close call," the trial judge is given sound discretion to choose among those multiple permissible options, guided by his own experience, the law, and the facts of the case before him. The abuse-of-discretion standard defers to the trial court's choice among those possibilities, even where the appellate court might have chosen differently. The trial judge acted on more than a hunch or suspicion in excusing the juror; his decision was the product of intentional deliberation. Thus, this Court concludes that the trial court did not abuse his discretion in excusing the juror for cause.

### F. Victim Impact Statement.

Appellant next contends that the victim impact testimony was improper based on two grounds: (1) that the evidence came from the victim's cousin, not a statutorily allowed family member under KRS 421.500, and (2) that the content of the testimony itself was overly emotional.

During the sentencing phase of the trial, the Commonwealth called McDonald's first cousin, LaCrystal Lewis, to provide victim impact testimony. Lewis spoke for nine minutes and demonstrated some emotion, verging on tears and sobs at times but never crossing that line. She described the effect on the family and how a gap existed in their lives. She also noted the Appellant had taken only a few minutes to kill the victim, but he was still alive more than 560 days later without owning up to what he had done. She also stated that she did not take her anxiety and depression medication and had gone to visit the victim's grave after hearing the verdict. She described growing up with the victim, claimed she was more than a statistic, that she had been a good student and college graduate, and had wanted to be a mother. At the end of her testimony, the Commonwealth asked if there was anything she "want[ed] to say to the jury" and Lewis responded with the following:

> Thank you on behalf of Dana's family. Thank you, from the bottom of our hearts, from the depths of our souls. You do not know how grateful we are to each and every one of you. We know that you have lives. We know that you have families. Thank you for serving justice, for seeing this for what it was. Thank you so much. I cannot say it enough. Every time your honor has called case number 09–CR–0625, Commonwealth v. Michael Elery, we have been here. Thank you so much. I cannot say it enough. That is coming from my soul. Thank you. Thank you so much.

Though the first thing Lewis said after stating her name was that she was the victim's first cousin, Appellant did not object to her testimony at that time. The Appellant did not object as Lewis began to show some emotion. Instead, he waited until the conclusion of her testimony to note any objection. At that time, his counsel asked for a mistrial because the Commonwealth directed the witness to talk directly to the jury, which he claimed was prejudicial. The Commonwealth responded that a witness always talks directly to the jury and that her testimony had not touched on the penalty itself or what she expected of them. The trial judge denied the motion.

 It is clear from the description of what happened at the trial that neither of the claims raised on appeal was preserved for Appellate review. Neither issue was the subject of a contemporaneous objection, RCr 9.22, nor were the issues now raised even mentioned when Appellant's counsel finally asked for a mistrial. Rather than complaining that Lewis did not fit within KRS 421.500 or that her testimony was overly emotional or excessive, Appellant's motion for a mistrial complained only that the Commonwealth had directed her to speak directly to the jury.

 As this Court has stated on numerous occasions, "appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky.1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky.2010). In other words, an appellant preserves for appellate review only those issues fairly brought to the attention of the trial court. *Richardson v. Commonwealth*, 483 S.W.2d 105, 106 (Ky.1972) ("An objection made in the trial court will not be treated in the appel-

late court as raising any question for review which is not within the scope of the objection as made, both as to the matter objected to and as to the grounds of the objection, so that the question may be fairly held to have been brought to the attention of the trial court." (quotation marks omitted)); *see also Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) ("A new theory of error cannot be raised for the first time on appeal."); *Young v. Commonwealth*, 50 S.W.3d 148, 168 (Ky.2001) ("Error is not preserved if the wrong reason is stated for the objection."). At best, such an error is subject to review for palpable error under RCr 10.26.

The palpable error rule allows reversal for an unpreserved error only when "manifest injustice has resulted from the error." RCr 10.26. This requires a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id.* at 5.

This Court cannot say that allowing a murder victim's cousin to testify instead of a relative specifically noted in the truth-in-sentencing statutes is such an error resulting in manifest injustice. To be clear, allowing such a relative to testify is technically error. If the victim of a crime is deceased, KRS 421.500(1)(b) outlines which relatives are permitted to provide victim impact testimony in accordance with KRS 532.055(2)(a)(7). In order, these relatives are a spouse, an adult child, a parent, a sibling, and a grandparent. As McDonald's first cousin, Lewis fell outside the statutorily mandated list of potential witnesses.

But Lewis was not wholly unrelated to the victim and was apparently very close to her, describing their relationship as sisterly. It does not appear that she testified as to anything that an allowable relative would not have testified to. It is clear from the testimony given that Lewis knew the victim well, and there is little doubt in this instance that a family member described in KRS 421.500 would have delivered powerful testimony as well. Moreover, we have found that violations of KRS 421.500 can even be covered by the harmless error rule, RCr 9.25. *See, e.g., Hunt v. Commonwealth*, 304 S.W.3d 15, 48 (Ky. 2009) (finding harmless error where victim's daughter testified when victim's spouse was available, despite clear hierarchy of allowable witnesses). Consequently, Lewis's testimony did not cause Appellant "manifest injustice" as required by RCr 10.26 just because she was only the victim's cousin.

Also, this Court cannot say that Lewis's testimony was so extreme, emotional, or outrageous as to result in manifest injustice. Appellant argues that Lewis's thanking the jury over and over and her clearly emotional state brought the testimony within the "inappropriate [ ]or excessive" category condemned in *St. Clair v. Commonwealth*, 319 S.W.3d 300, 317 (Ky.2010).

The simple fact that Lewis thanked the jury for its verdict in the course of her testimony was not even error, much less palpable error. Even such a statement made by the prosecutor would not be reversible error. In *Soto v. Commonwealth*, the Court found that the prosecutor "thanking the jury on behalf of the Commonwealth [and] the victims' family" before the verdict is even rendered was "gratuitous" but that it "hardly rises to the level of argument that 'tends to cajole or to coerce a jury to reach a verdict which

would meet with the public favor.'" *Soto v. Commonwealth*, 139 S.W.3d 827, 873–74 (Ky.2004) (quoting *Jackson v. Commonwealth*, 301 Ky. 562, 192 S.W.2d 480, 482 (1946)). Lewis's statements were largely in line with such a prosecutorial statement, though she only sought to express the victim's family's gratitude. While it was perhaps gratuitous, it does not warrant reversal.

 That Lewis's testimony was somewhat emotional is also not palpable error. If victim impact evidence is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). However, the victim impact testimony provided by Lewis was simply not "unduly prejudicial" to the defendant. While this testimony was admittedly emotional, it was not overly so. She did not cry or harangue the jury. She took only nine minutes to deliver her evidence. She maintained a retrospective focus even during the portion of her testimony when she directly addressed the jury. Although she thanked the jury for finding Appellant guilty, she did not even allude to the pending penalty decision that the jury would soon be called to make, much less provide a recommendation. That Lewis showed an understandable, expected amount of emotion is not error, much less palpable error.

### G. Admission of Character Evidence.

 The Commonwealth's last witness was a paralegal who testified to performing a record check of McDonald and finding that she had never been charged with a crime. Appellant's attorney failed to object to this testimony at the time, waiting until the next day, after the close of the defense's case, to ask that the testimony be stricken as irrelevant and the jury be admonished to ignore it. The trial court declined to do so. Presumably, the Commonwealth sought to admit this testimony as evidence of the victim's peaceful character to negate a claim that she was the initial aggressor under KRE 404(a)(2). Appellant claims it was impermissible character evidence.

Appellant admits the alleged error was not preserved. Consequently, he seeks palpable error review of the testimony in accordance with RCr 10.26.

This Court need not resolve whether this evidence was erroneously admitted. Even assuming that it was error, it does not reach the level of palpable error. As discussed above, palpable error occurs only when a "manifest injustice results." RCr 10.26. A brief statement by a paralegal that the victim had never been charged with a crime is unlikely to have changed the outcome of this trial. *Martin*, 207 S.W.3d at 3. The evidence did not relate to the guilt or innocence of the Appellant, assuming self-defense was not at issue. Nor did the error amount to one "so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* The evidence against the Appellant was significant, including multiple confessions and physical evidence. This Court concludes that the admission of this character evidence does not constitute a "manifest injustice" and was not palpable error.

### H. Cumulative Error Analysis.

 Appellant urges this Court to overturn his convictions on the grounds of cumulative error. *See Funk v. Commonwealth*, 842 S.W.2d 476, 483 (Ky.1992) (noting that "the cumulative effect of the prejudice" multiple errors can require reversal). The Commonwealth urges the Court to hold that because no individual error is sufficient to overturn the conviction, then the cumulative error analysis is not implicated by this case, citing *McQueen v. Commonwealth*, 721 S.W.2d 694 (Ky.1986).

The Commonwealth has exaggerated the holding of *McQueen*. In that case, the Court held that cumulative error analysis was inapplicable because none of the claims of error actually showed error, *id.* at 701, not because none of the errors were insufficient on their own to overturn a conviction. Any other reading of this case removes the cumulative error analysis from the law completely. If an error is sufficient on its own to warrant reversal, a Court need not rely on cumulative error to overturn the case. Indeed, the doctrine is necessary only to address "multiple errors, [which] although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth,* 313 S.W.3d 577, 631 (Ky.2010).

Still, the doctrine is a limited one. "We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* If the errors have not "individually raised any real question of prejudice," then cumulative error is not implicated. *Id.; see also id.* ("[W]e have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice."). Because the errors in this case did not raise any questions of real prejudice to the Appellant, the theory of cumulative error is not applicable.

### III. Conclusion

For the foregoing reasons, Michael Elery's convictions and sentence for murder, tampering with physical evidence, and violation of a protective order are affirmed.

All sitting. All concur.