# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 15, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000688-MR

JAMES EDWARD HARRIS                                              APPELLANT


ON APPEAL FROM LAUREL CIRCUIT COURT
V.                HONORABLE GREGORY ALLEN LAY, JUDGE
NO. 14-CR-00199-003


COMMONWEALTH OF KENTUCKY                                         APPELLEE


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A circuit court jury convicted James Edward Harris on two counts of first-degree sodomy, for which he was sentenced to fifty years' imprisonment. He now appeals that judgment as a matter of right[1], contending that the trial court erred in allowing trial testimony of his cross-dressing, and by allowing the Commonwealth to introduce evidence of severed co-defendants' charges. Because we find no reversible error below, we reject Harris's arguments and affirm the trial court's judgment.

---

[1] Ky. Const. § 110(2)(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Stephen[2] was five or six years old when his mother and stepfather first took him to James Harris's home, where a course of sexual conduct would commence during the ensuing four years. He still remembers his first encounter with Harris. After driving to the home, Stephen's stepfather, Albert, instructed him to go inside the house with his mother. The home was a one-room block building, with the interior divided by sheets. He recalled seeing a clothes rack full of women's clothing.

Stephen was instructed to go behind one of the sheets, and Albert and Harris went with him. He remembers Harris wearing a sundress. Albert told him to pull down his shorts. While Albert watched, Harris bent Stephen over a table and began raping him by anal penetration. Harris bruised Stephen's ribs with his hands, and Stephen remembers feeling the sundress draped over his back. This was unfortunately not the last time Stephen was forced into sexual contact with Harris.

Sometime later, Stephen was brought back to the same building. He was again instructed to go to the room behind the sheets, except this time his mother was present as well. He was instructed to remove his shorts, but this time he resisted. Albert then jerked down his pants, and Harris took his place behind him. Albert held Stephen down as his mother injected him with an unknown drug. Stephen began to fall asleep and does not remember the sexual

---

[2] Stephen is a pseudonym used to protect the victim's identity.

encounter that followed. He awoke in the car later, with his sides bruised and a "ripped feeling" in his anus.

These assaults would continue for about three more years. Stephen never told anyone because he feared Albert, who was physically abusive to him and his mother. Fortunately for Stephen, social services eventually removed him from their custody, sending him to live with his grandfather. Later in life, Stephen began to act out, having major behavioral issues at school. He was eventually placed in foster care, where he finally disclosed to his counselor and his supervisor his history of sexual assault. They eventually contacted law enforcement.

The Kentucky State Police went to speak with Harris. They found him living with his mother, but they noted a block building matching Stephen's description elsewhere on the property. They also saw women's clothing and a blanket hanging in an open area. During the interview, Harris admitted that he knew Tina and Albert and that they would visit him with their children. He also admitted to occasionally dressing in women's clothing—he claimed he did so to get "kinky" with other women. But Harris refused to acknowledge that he knew Stephen or his brothers' names and claimed they had never been in his building.

Harris, Tina, and Albert were all indicted. Tina and Albert were charged with multiple counts of human trafficking, in addition to first-degree complicity to sodomy. Harris was indicted on several counts of first-degree sodomy.

At trial, the Commonwealth offered testimony from Elvis Proffitt—an inmate who shared a cell with Harris. After Proffitt's attorney contacted law enforcement, Proffitt agreed to wear a wire, and recorded a conversation with Harris. In the conversation: Harris referred to Stephen by name; he confirmed that Albert would trade Stephen for drugs; that Albert would "shoot them up" and then they [Stephen and Harris] "would fuck." Proffitt admitted at trial that he received assistance from the Commonwealth in his pending cases for agreeing to help, but denied any undue influence in obtaining Harris's confession.

Harris contended at trial that Proffitt had drugged him and coerced him into making the incriminating statements and continued to deny the allegations levied against him. The jury ultimately convicted him on two counts of first-degree sodomy and sentenced him to fifty years' imprisonment. He now brings this matter-of-right appeal premised on two alleged evidentiary mistakes at trial.

## II. ANALYSIS.

### A. The Trial Court Did Not Err in Allowing Evidence of Harris's Cross-Dressing.

Harris first contends that trial court inappropriately allowed testimony before the jury of his habit for wearing women's clothing. He claims that such evidence is not relevant, constituted improper proof of "prior bad acts," and unfairly prejudiced his case. Harris properly preserved this issue for appeal through a motion in limine to exclude any reference to his cross-dressing, which was denied by the trial court. Evidentiary matters are reserved to the

trial court's sound discretion, and appeals on an evidentiary decision are reviewed under the abuse-of-discretion standard. So we will not overrule the trial court's ruling absent a finding that the decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[3]

Harris initially contends that he was given inadequate notice of the Commonwealth's intention to use this evidence at trial. And to be sure, KRE 404(c) requires the prosecution to provide reasonable notice to the defense of its intention to invoke any character evidence associated with KRE 404(b). We think this argument fails for two reasons. First, Harris clearly had notice of the Commonwealth's intention to reference Harris's cross-dressing because he filed a pretrial motion in limine to attempt to bar its introduction. From that point, the Commonwealth could reasonably conclude Harris was aware of its intent to introduce at trial evidence of his habit for wearing women's clothing. Second, we think Harris's notice argument falls flat because the purpose of this evidence was not to prove conformance with character under KRE 404(b).

In his motion in limine filed before the start of trial, Harris contended that any evidence of his cross-dressing was improper under KRE 404(b). KRE 404(b) declares that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Harris's motion conceded that cross-dressing is not illegal; rather, he posited that this behavior could be considered a "prior bad act" meriting exclusion of this testimony. Essentially, Harris's position is that,

_____

[3] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

5

whether meritorious or not, the community may view this particular behavior as a "bad act." But we are not persuaded the Commonwealth used this evidence to suggest Harris's conformance with this behavior is proof of his propensity for sodomizing children.

KRE 404(b) provides two exceptions to its ban on introduction of character evidence. Such evidence may be admissible if: (1) offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or (2) so inextricably intertwined with the other evidence essential to the case that separation of the two could not be accomplished without serious adverse effect on the offering party.

We are convinced the proffered evidence of Harris's cross-dressing fits squarely within the first exception to establish Harris's identity as Stephen's sodomizer. In essence, the Commonwealth is not using this information to suggest that a character for cross-dressing is *ipse dixit* associated with child rape. Its real purpose is far less malicious. These alleged acts of sexual violence occurred in the distant past, when Stephen was a small child. He distinctly remembers his assaulter wearing a sundress. The Commonwealth simply invokes this particular evidence to help establish it has the right man, that Harris is indeed the man who violated Stephen so many years ago. So we are certain this proof does not undermine KRE 404(b)'s general prohibition of character evidence.

6

Even so, Harris maintains this evidence violates our rule that admissible evidence must be relevant, that it must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[4] And even if the evidence is relevant, Harris contends that the proof should nonetheless be rendered inadmissible because whatever probative value it may possess in proving the Commonwealth's case is substantially outweighed by the prejudice to his defense.[5]

It is true that wearing female attire is not an element to the charges in this case. But this is a unique fact that can help the Commonwealth more conclusively establish that it was Harris who assaulted Stephen in his youth. Harris admittedly wears women's clothing. Stephen remembers that the man who raped him wore women's clothes as well. We think it is clear that establishing this fact makes it more probable that Harris committed those horrendous acts of sexual assault. We agree with the trial court that this evidence is relevant and appropriate for introduction at trial.

Because we concur the trial court committed no error below, we affirm its ruling allowing testimony of Harris's habit for wearing women's clothing.

## B. There Was No Reversible Error in Admitting Evidence of Harris's Co-Defendants' Charges.

For Harris's second and last claim of error below, he contends that the trial court committed reversible error by allowing testimony of his co-

---

[4] KRE 401.

[5] *See* KRE 403.

7

defendants' charges to be presented before the jury. Tina and Albert, Stephen's mother and step-father, were charged with multiple counts of human trafficking and first-degree complicity to sodomy. This charges arose from the same facts and circumstances surrounding Harris's conduct toward Stephen, but Albert and Tina were tried separately. During Proffitt's testimony at Harris's trial, he referenced Albert and Tina's charges in open court.

At trial, Harris failed to raise an objection to this testimony. In *Elery v. Commonwealth*, we held that "an appellant preserves for appellate review only those issues fairly brought to the attention of the trial court."[6] Despite failing to preserve the issue below, Harris is not totally without relief. Under Kentucky Rules of Criminal Procedure (RCr) 10.26, we may review improperly preserved issues for palpable error. A palpable error is one that "affects the substantial rights of a party" and "appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."[7] For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable."[8]

Harris primarily contends that because the trial court severed his case from Albert and Tina's charges, this evidence is inadmissible and stigmatizing to his case. RCr 8.31 instructs the trial court to order separate trials "if it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses." The argument follows that, if the trial court felt that Albert and Tina's case would unfairly prejudice Harris's case, or vice versa, he should

---

[6] 368 S.W.3d 78, 97 (Ky. 2012).

[7] RCr 10.26.

[8] *Doneghy v. Commonwealth*, 410 S.W.3d 95, 106 (Ky. 2013) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)).

have effectively been on notice that any evidence relating to those other charges would improperly influence Harris's case. As such, he argues that evidence of Albert and Tina's charges is inadmissible testimony during his trial.

We agree that the trial court likely erred in admitting this testimony, but we believe the error to be harmless. Harris is right that human trafficking is a rare criminal charge and it is one that likely churns the stomachs of any juror sitting on his trial. But our analysis does not end there. Albert and Tina were both active participants during all of the inexplicable acts Harris allegedly performed on Stephen. There was ample testimony during Harris's trial of Albert and Tina, in exchange for narcotics, drugging their young son so Harris could forcibly have his way with him. There can be no manifest injustice resulting from simply naming the co-defendants' charges when Harris takes no issue with the Commonwealth outlining the precise conduct associated with human trafficking throughout trial. We are confident that this testimony in no way undermined the integrity or fairness of Harris's trial. Because we are certain this alleged error would not affect the outcome below, we affirm the trial court on this issue.

## III. CONCLUSION.

Because we find no reversible error, we affirm the trial court's judgment below.

All sitting. All concur.

9

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Ray Prather
Assistant Attorney General