NICKELL, JUDGE:
In these consolidated appeals, Christopher Applegate challenges the Campbell Circuit Court's denial of a suppression motion, denial of a motion to withdraw his guilty pleas, recommendation of special conditions of parole, imposition of court costs, and imposition of a partial public defender fee. Applegate also challenges his conviction on a charge of possession of a handgun by a convicted felon. Following a careful review, we affirm in part and reverse in part.
On May 12, 2014, police received a report of a pursuit between two cars with one of the drivers being armed with a gun. On arrival in the area, Campbell County Police Officer Thomas Lakes observed a vehicle matching the description in the report. Officer Lakes conducted a traffic stop of the vehicle, approached the car, and asked the driver-later identified as Applegate-to exit the vehicle. Once he explained the reason for the stop, Officer Lakes inquired whether Applegate had any guns. Applegate indicated he did not; volunteering he had recently been released from prison and wanted no trouble with the police. Officer Lakes subsequently learned Applegate had an outstanding warrant for failure to register as a sex offender.
Backup officers arrived on-scene, one of whom observed a handgun in Applegate's car in plain view in a seat pocket within reach of the driver. On top of the console between the front seats was a quantity of methamphetamine. Applegate was arrested and charged with trafficking in methamphetamine. Officers located additional drugs, scales and packaging material, as well as two cellular telephones, a tablet computer and a digital camera in the vehicle.
Believing the electronic devices might contain information pertinent to his drug investigation, Officer Lakes prepared an affidavit for a search warrant for the two phones and the tablet. He indicated he was looking for photos, videos or communications related to guns, drug activity, co-conspirators, drug network activity and other associated information. After the warrant was issued, the devices were delivered to Bureau of Alcohol, Tobacco and Firearms Enforcement Agent Michael Oergel, a digital investigator, for forensic *87 examination, analysis and recovery of data. Both phones and the tablet were equipped with either a SIM or MicroSD memory card to expand the memory capabilities of the devices; the presence of the expanded memory cards could not be readily discerned by a user.
During his examination, Agent Oergel found what he suspected to be photographs of a methamphetamine cooking operation. Although he had not been looking for evidence of other crimes, he could not tell from the file names what sort of images he would find upon opening each file. Several of the files contained photos and videos he immediately recognized as depicting child pornography. Agent Oergel returned the phones and tablet to Officer Lakes along with a narrative report of the contents of his findings.
Based on the finding of child pornography, and Applegate's prior conviction for possessing such illicit material, a second search warrant was procured for the digital camera that was in Applegate's possession on the day of his arrest. No evidence of illegal activity was recovered.
A third search warrant was procured to conduct a further, more in-depth examination and analysis of all the devices. This analysis revealed a large amount of data, including text messages relating to drug trafficking and additional photos and videos depicting child pornography.
Applegate was indicted for firearm-enhanced trafficking in methamphetamine[1] and being a persistent felony offender in the second degree (PFO II).[2] He was separately indicted for possession of a handgun by a convicted felon.[3] In a third indictment, he was charged with seven counts of possessing material portraying a sexual performance by a minor[4] and being a PFO II.
Prior to trial, Applegate moved to suppress all evidence seized as a result of the search warrants, challenging their validity and arguing investigators exceeded the scope of the warrants. At the conclusion of a hearing on the matter, the trial court raised an issue related to sufficiency of the affidavit supporting issuance of the initial search warrant. After permitting the parties to brief the matter and receiving multiple memoranda on the issue, the trial court convened a second hearing to take testimony from Officer Lakes and former District Court Judge Gregory Popovich, the issuing magistrate of the challenged search warrant. The trial court denied the suppression motion in a lengthy and comprehensive order entered on July 1, 2016.
Applegate subsequently entered an Alford[5] conditional plea on the charges of possessing material portraying a sexual performance by a minor, reserving the right to appeal from the trial court's denial of his suppression motion.[6] In that case, the PFO II charge was dismissed, and the Commonwealth recommended a sentence *88 of thirteen years' imprisonment. Applegate entered an unconditional plea on the trafficking charge with the PFO II charge being dismissed and the Commonwealth recommending an eight-year sentence. He also entered an unconditional plea on the charge of possession of a firearm by a convicted felon, receiving a recommended sentence of five years on that charge. The eight- and five-year sentences were to run consecutively to each other and concurrently with the thirteen-year sentence, for a total aggregate sentence of thirteen years' imprisonment. A subsequent motion to withdraw his guilty pleas on the trafficking and possession of a handgun charges was denied. These consolidated appeals followed.
Applegate raises multiple contentions of error in seeking relief from his convictions. First, he launches a multi-faceted attack on the trial court's denial of his suppression motion. Next, he contends he was not a convicted felon and therefore, could not legally be found guilty of the charge of being a felon in possession of a handgun. Third, he contends the trial court should have granted his motion to withdraw his guilty pleas. Finally, he argues the trial court made three errors in his sentencing when it sought to impose special conditions on his parole, ordered him to pay court costs, and levied public defender fees. We address these issues in reverse order.
The Commonwealth concedes error as to the sentencing issues. We have reviewed the record and agree the trial court improperly attempted to impose special conditions on Applegate's parole. Chames v. Commonwealth , 405 S.W.3d 519 (Ky. App. 2012). We likewise agree the trial court erred in ordering Applegate to pay court costs in installments beginning sixty days after his release, as these necessarily could not be paid within one year of the date of sentencing as required by KRS 23A.205(3). Further, we hold the trial court erred in assessing a public defender fee as it did not conduct a nonadversarial hearing to determine whether Applegate had the present ability to pay for his legal representation as required by KRS 31.211(1). See also Maynes v. Commonwealth , 361 S.W.3d 922, 929 (Ky. 2012). For these reasons, the judgments of the Campbell Circuit Court are reversed in part. The trial court is directed to enter corrected sentencing orders removing the offending language and requirements.
Next, Applegate contends the trial court should have granted his motion to withdraw his guilty pleas on the charges of trafficking and possession of a handgun by a convicted felon. However, review of the record reveals the arguments presented to this Court in support of his position are wholly different from those presented to the trial court. Attempting to present new reasons supporting his position at this late date is wholly insufficient. The time to make these arguments was in the trial court. It is axiomatic that a party may not "feed one can of worms to the trial judge and another to the appellate court." Kennedy v. Commonwealth , 544 S.W.2d 219, 222 (Ky. 1976), overruled on other grounds by Wilburn v. Commonwealth , 312 S.W.3d 321, 327 (Ky. 2010) (citations omitted). As the trial court was not presented these additional arguments, nor given the opportunity to rule thereon, we shall not consider them for the first time on appeal.
Applegate next contends he was not a convicted felon and therefore, his conviction of being a felon in possession of a handgun was improper. We disagree. First, Applegate entered an unconditional plea, thereby waiving "all defenses except that the indictment did not charge an offense." Hughes v. Commonwealth , 875 S.W.2d 99, 100 (Ky. 1994). Second, although he attempts to circumvent his *89 waiver by couching his argument in terms of an allegedly illegal sentence, the issue presented is actually one of sufficiency of the evidence, alleging the Commonwealth could not prove the fact of a prior felony conviction. Post-judgment challenges to sufficiency of the evidence are precluded by unconditional guilty pleas. Johnson v. Commonwealth , 103 S.W.3d 687, 696 (Ky. 2003) (citing Taylor v. Commonwealth , 724 S.W.2d 223, 225 (Ky. App. 1986) ). Further, although Applegate was ultimately successful in having the underlying felony conviction overturned, that conviction was not void ab initio , and was valid at the time he armed himself with a handgun in the instant matter. "The Supreme Court has long since held that weapons disability statutes ... require felons to clear their legal status prior to obtaining a firearm. Lewis v. United States , 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (denying, as a defense to prior firearms statute, collateral attack that predicate felony conviction had been unconstitutionally obtained)." United States v. Coleman , 458 F.3d 453, 456 (6th Cir. 2006). Applegate's contention is without merit.
Finally, we turn to Applegate's challenges to the trial court's denial of his suppression motion. Although three search warrants were obtained over a period of three months, Applegate's arguments center solely on the validity of the initial warrant and the resulting evidence obtained following that search. He argues the search exceeded the scope of the search warrant; the affidavit in support of the search warrant lacked a sufficient nexus to establish probable cause; the "good faith" exception to the exclusionary rule was inapplicable and could not be used to save the search; and the officers engaged in an improper "general" search. Again, we disagree with Applegate's contentions.
Our standard for appellate review of rulings on pretrial motions to suppress evidence remains unchanged despite the recent repeal of RCr 9.78 and its reformulation under RCr 8.27. Simpson v. Commonwealth , 474 S.W.3d 544, 546-47 (Ky. 2015). We apply the same two-step process adopted in Adcock v. Commonwealth , 967 S.W.2d 6, 8 (Ky. 1998). First, we review the trial court's findings of fact, which are deemed to be conclusive, if they are supported by substantial evidence. Next, we review de novo the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law.
Maloney v. Commonwealth , 489 S.W.3d 235, 237 (Ky. 2016).
Applegate first alleges the search exceeded the scope of the terms of the search warrant and was, therefore, unconstitutional. He claims the language of the warrant permitted officers to search only for communications between himself and others but did not permit a search for images or videos. Further, Applegate contends the failure to list a memory card inserted into the tablet as an item to be searched rendered any subsequent search of that memory card impermissible.
Our review of the record reveals the basis Applegate presents for his assertion regarding the impropriety of police searching the electronic devices for images and videos is wholly different from that presented to the trial court. In his argument to the trial court, Applegate raised no challenge to police searching for images, arguing only that videos were not listed as an item subject to the search. Before this Court, Applegate contends the warrant did not authorize a search for images or any kind-whether still or moving-asserting rules of grammar mandate such a finding; no such challenge was previously raised. Because this attack was not *90 presented to the trial court for a ruling, it will not be considered for the first time on appeal. "Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court. See Elery v. Commonwealth , 368 S.W.3d 78, 97 (Ky. 2012) (citing Kennedy , 544 S.W.2d at 222 )." Owens v. Commonwealth , 512 S.W.3d 1, 15 (Ky. App. 2017) (footnote omitted). Only issues fairly brought to the attention of the trial court are adequately preserved for appellate review. Elery , 368 S.W.3d at 97 (citing Richardson v. Commonwealth , 483 S.W.2d 105, 106 (Ky. 1972) ; Springer v. Commonwealth , 998 S.W.2d 439, 446 (Ky. 1999) ; and Young v. Commonwealth , 50 S.W.3d 148, 168 (Ky. 2001) ).
In his challenge to the search of the memory card from the tablet, Applegate makes little more than a passing swipe, consisting of only conclusory assertions. No authority is cited for his position. We will not search the record to construct Applegate's argument for him, nor will this Court undergo a fishing expedition to find support for underdeveloped arguments. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." Milby v. Mears , 580 S.W.2d 724, 727 (Ky. App. 1979).
A careful review of the record reveals substantial evidence to support the trial court's decision, and we discern no error in its application of the law to the facts. We agree with the trial court that, although inartfully drawn, the search warrant authorized officers to conduct a search for images-both still and moving-for evidence of Applegate's involvement in drug trafficking. The memory card from the tablet-internal flash media used to expand storage capacity-was likewise included within the parameters of the search warrant. Applegate's contentions to the contrary are without merit.
Coupled closely with his argument the officers exceeded the scope of the warrant is Applegate's contention officers conducted an impermissible "general" search. In this portion of his challenge, he does not contend the warrant was overbroad, but rather, rephrases his previous argument and wraps it in different cloth. He alleges officers looked at all the files recovered from the devices, thus making the search "general" rather than the limited search authorized by the warrant. We disagree.
General searches are prohibited as is the "seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Berger v. New York , 388 U.S. 41, 58, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967) (quoting Marron v. United States , 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) ). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional" and the evidence excluded. Horton v. California , 496 U.S. 128, 140, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990).
The scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." United States v. Ross , 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). The Ross Court held that a lawful search is not "limited by the possibility that separate acts of entry or opening may be required to complete the search." Id. at 820-21, 102 S.Ct. at 2170-71. ...
....
*91 An otherwise valid search is transformed into an impermissible general search only where the searching officers demonstrate a "flagrant disregard for the limitations of a search warrant[.]" United States v. Lambert , 771 F.2d 83, 93 (6th Cir. 1985).
Lundy v. Commonwealth , 511 S.W.3d 398, 402-03 (Ky. App. 2017)
Here, the terms of the warrant specifically authorized searching officers to examine the three devices for electronic evidence of Applegate's involvement with drug trafficking. In executing the search, the officers opened various types of files to determine whether they contained incriminating evidence. Contrary to Applegate's assertion, the officers' actions did not constitute an impermissible general search because they were following the authorization contained in the search warrant.
[S]o long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence.
United States v. Richards , 659 F.3d 527, 540 (6th Cir. 2011) (citation omitted). As previously stated, the record contains no evidence officers exceeded the scope of the warrant. Likewise, it is clear officers were searching only for evidence tying Applegate to drug trafficking. In so doing, they uncovered clear, unequivocal and immediately apparent evidence of Applegate's possession of child pornography. This evidence was found in the same types of files which could reasonably have contained evidence related to drug trafficking. The officers properly limited their search in conformity with the warrant and, as the trial court correctly found, did not conduct an impermissible general search.
Applegate next asserts the affidavit underlying the search warrant failed to establish a sufficient nexus to establish probable cause for issuance of the warrant related to the tablet. Again, we disagree.
Appellate courts "review the four corners of the affidavit and not extrinsic evidence in analyzing the warrant-issuing judge's conclusion." Commonwealth v. Pride , 302 S.W.3d 43, 49 (Ky. 2010) (citation omitted). When sufficiency of an affidavit is challenged, our review is deferential and undertaken "in a commonsense, rather than hypertechnical, manner." Moore v. Commonwealth , 159 S.W.3d 325, 329 (Ky. 2005). Issuing judges are permitted to make reasonable inferences about the evidence and where it might be located. Elders v. Commonwealth , 395 S.W.3d 495, 501 (Ky. App. 2012) ; Beckam v. Commonwealth , 284 S.W.3d 547 (Ky. App. 2009).
As previously stated, the affidavit underlying the search warrant was not artfully drafted and could clearly have been more thorough. However, the relevant information necessary for the issuing judge to determine a nexus between the electronic devices, Applegate, and the alleged criminal activities was contained in the affidavit. The devices were particularly described, the events preceding their seizure were set out in detail, and the evidence sought was specified. The issuing judge could easily synthesize the information and reasonably infer the devices were under Applegate's control and contained evidence of illicit activity. Thus, we hold a sufficient nexus was shown, and the search warrant was properly issued.
Finally, Applegate argues the trial court incorrectly determined the "good-faith" exception to the exclusionary rule was applicable. Although the trial court originally believed the affidavit lacked sufficient indicia *92 of a nexus between Applegate and the tablet, it concluded the good-faith exception cured any defect. Having determined the affidavit adequately revealed an appropriate nexus, we do not believe the trial court was required to reach the issue of whether the exception applied. It is axiomatic that we may affirm the trial court for any reason supported by the record. McCloud v. Commonwealth , 286 S.W.3d 780, 786 (Ky. 2009). Nevertheless, were we to have determined-as did the trial court-the affidavit did not establish the requisite nexus, the good-faith exception would apply to the facts before us.
Suppression is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra , 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). In United States v. Leon , 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held the exclusionary rule does not apply when police officers act in good faith in executing what is later ruled to be a legally deficient search warrant. If an officer has an objectively reasonable belief in the sufficiency of the warrant and the probable cause determination, suppression is not warranted. However,
[i]f the affidavit contains false or misleading information, the officer's reliance cannot be reasonable. Likewise, the Court retained the exclusionary rule and applied no presumption of validity in cases of abandonment by the judge of a detached and neutral role, and in cases where the officer's belief in the existence of probable cause is entirely unreasonable. Finally, suppression was retained as a remedy where the warrant is facially deficient by failing to describe the place to be searched or the thing to be seized. In sum, the court imposed a standard of objective reasonableness on police activity and retained the suppression remedy when police conduct falls below that standard. Leon , 468 U.S. at 922-924, 104 S.Ct. at 3420-3421.
Crayton v. Commonwealth , 846 S.W.2d 684, 687-88 (Ky. 1992).
The record herein reveals none of the deficiencies described in Crayton to preclude application of the good-faith exception. The investigative officers acted in an objectively reasonable manner, no misconduct occurred in the making of the affidavit or otherwise, the issuing judge did not abandon his neutral and detached role, and the items to be searched were adequately described. It plainly appears the affidavit for the initial search warrant was made in good faith. If the warrant was "erroneously issued by virtue of judicial error, neither the Constitution nor sound public policy requires suppression of the evidence." Id. at 688. Suppression of the evidence could have no deterrent effect on the officers' actions and would be improper under the circumstances. Had there been an error in finding probable cause, receiving or relying on information not contained within the four corners of the affidavit, or in issuing the warrant,
[t]he error in the assessment of the affidavit was a judicial error and any error in receipt of information extrinsic to the affidavit was likewise a judicial error. The trial court candidly acknowledged its error in assessment of the affidavit but forthrightly found that the officer acted in good faith. Suppression of the evidence here could have no deterrent effect upon the police and the record fails to show any abandonment by the judge of his judicial function. It should not be overlooked that suppression of the evidence is not a remedy for judicial *93 error as there is no constitutional right to suppression.
Id. at 689. The trial court did not err in concluding the good-faith exception was applicable and cured any alleged defects in the affidavit or ensuing search warrant.
For the foregoing reasons, the judgments of the Campbell Circuit Court are AFFIRMED IN PART and REVERSED IN PART.
ALL CONCUR.

Kentucky Revised Statutes (KRS) 218A.1412, a Class C felony.

KRS 532.080.

KRS 527.040, a Class C felony.

KRS 531.335, a Class D felony.

North Carolina v. Alford , 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

We note the record does not contain any written reservation of the right to appeal the suppression issues as required by the plain language of Kentucky Rules of Criminal Procedure (RCr) 8.09. However, the Commonwealth and Applegate each informed the trial court the plea would be conditional, and the issues raised on appeal were expressly discussed during the plea colloquy. A similar practice was accepted by the Supreme Court of Kentucky in Dickerson v. Commonwealth , 278 S.W.3d 145, 149 (Ky. 2009).