RENDERED:  OCTOBER 9, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2018-CA-1603-MR, 2018-CA-1641-MR, AND 2018-CA-1773-MR

EHMAUD LYJUAN TUCKER[1]                                      APPELLANT

APPEALS FROM FAYETTE CIRCUIT COURT
v.        HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NOS. 17-CR-00974, 17-CR-01226, AND 17-CR-01252

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND MAZE, JUDGES.

ACREE, JUDGE:  Ehmaud Lyjuan Tucker appeals the Fayette Circuit Court's

May 18, 2018 order denying his motion to suppress evidence obtained from his

---

[1] Appellant's first name is spelled "Ehmuad" in the notice of appeal and in other places throughout the record.

cell phone. Tucker believes the circuit court erred in denying his motion because the search warrant was overbroad. Finding no error, we affirm.

## BACKGROUND

On July 7, 2017, police were investigating several recent burglaries in the Lexington area. An e-mail was distributed throughout the police department that included a description of the suspect. The e-mail described a black male in his late teens or early twenties wearing a pink North Face backpack. That day, police saw Tucker – who fit the description – and attempted to detain him. Tucker fled and, while running, tossed away a firearm. Police eventually caught Tucker and found the firearm, marijuana, and several of the stolen items.

After detaining Tucker, the police sought a warrant to search his cell phone. Detective Gary Cottrell prepared and signed an affidavit to serve as the basis for a judge's conclusion probable cause for a search warrant existed. The affidavit described Tucker's cell phone by location and by IMEI number.[2] It sought "[a] complete forensic examination of the above listed Cellular telephone [including] examination by use of specialized software and techniques accepted by the computer forensic scientific community for a proper seizure and retention of digital evidence." (Record (R.) at 91.) The affidavit further stated that "there is

---

[2] The IMEI, or International Mobile Equipment Identity, number is a unique 15-digit code identifying the device.

probable and reasonable cause to believe and affiant does believe that said property

constitutes . . . evidence which tends to show that a crime has been committed or

that a particular person has committed a crime." (*Id.*) After describing the

circumstance of Tucker's arrest, including the basis of the affiant's/officer's belief

Tucker was involved in a series of burglaries between June 27 and July 7, 2017,

the affidavit states:

> It is the affiant's experience that cellular devices and cellular phone records can contain information showing whom the subjects have been in contact with and the locations of the contact, during specific time periods. It is also affiant's experience that data that has been deleted from a cellular device can be recovered during a forensic examination of the item.

(R. at 92.) The warrant was issued on July 10, 2017.

The warrant identifies Tucker's cell phone and then authorizes and

describes the scope of the search as follows:

> A complete forensic examination of the above listed Cellular telephone to include: phonebook, call history (including received, dialed and missed calls), incoming, outgoing and drafts of text messages, IMEI/ESN/IMSI number, pictures and images, video, audio recordings, ringtones, phone details, memory card and SIM card, for a full forensic examination by use of specialized software and techniques accepted by the computer forensic scientific community for the proper seizure and retention of digital evidence.

(R. at 94.)

The search revealed a video and photograph of Tucker holding an AR-15 rifle that was modified with non-factory parts. Those distinctive features were identified by a homeowner whose rifle was stolen during a burglary reported on May 25, 2017. The search also revealed a text message, delivered on May 25, 2017, referring to an AR-15 rifle. Based on this, police applied for, and received, another search warrant. This time the warrant was for Tucker's DNA. The goal was to match Tucker's DNA with blood evidence left during the May 25 burglary. The Kentucky State Police crime lab matched the evidence to Tucker's DNA, resulting in Tucker being charged with first-degree burglary in a new case.[3]

Tucker's counsel filed a motion to suppress evidence in the original case and the new burglary case. The motion was denied. Eventually, Tucker entered a conditional guilty plea for first-degree fleeing or evading police, tampering with physical evidence, receiving stolen property under $10,000, carrying a concealed deadly weapon, attempted tampering with a prisoner monitoring device, and first-degree burglary. The culmination of these sentences ran consecutively for a total of eleven (11) years. Tucker filed a notice of appeal in all three cases, which were consolidated for this review.

---

[3] During the pendency of these actions, Tucker was released on electronic monitoring but tampered with the device and fled. This resulted in additional criminal charges.

## STANDARD OF REVIEW

An appellate court reviewing a lower court's denial of a motion to suppress evidence utilizes a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004).

## ANALYSIS

The Supreme Court of the United States has held there is a reasonable expectation of privacy in the contents of one's cell phone. *Riley v. California*, 573 U.S. 373, 385-86, 134 S. Ct. 2473, 2484-85, 189 L. Ed. 2d 430 (2014). Accordingly, a search warrant is generally required before an officer can search the data contained within a person's cell phone, and the warrant must meet the particularity requirement of the Fourth Amendment. The Fourth Amendment's requirement that a warrant "particularly describe[] the place to be searched, and the persons or things to be seized . . . makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Berger v. State of N.Y.*, 388 U.S. 41, 58, 87 S. Ct. 1873, 1883, 18 L. Ed. 2d 1040 (1967) (citations omitted).

Tucker claims the warrant here was overbroad, lacking this necessary particularity, and thereby allowing the unconstitutional general search of his cell

phone contents. He says the reason the warrant was overbroad is that "[i]t contained no reference to any specific crime for which the police were to search for evidence and contains no date restriction." (Appellant's brief, pp. 9-10.) This is not entirely correct.

We find guidance from this Court's factually similar case of *Applegate v. Commonwealth*, authored by Judge, now Justice, Nickell. 577 S.W.3d 83 (Ky. App. 2018), *disc. rev. denied* (Ky. Jun. 5, 2019). In that case, police officers conducted a lawful search of Applegate's car, discovering a handgun, drugs, scales, packaging materials, a tablet computer, digital camera, and two cell phones. *Id*. at 86. Believing the electronic devices might contain evidence pertinent to his drug investigation, the investigating officer prepared an affidavit for a search warrant of the cell phones and tablet. *Id*. Specifically, the affidavit stated the officer was looking for "photos, videos or communications related to guns, drug activity, co-conspirators, drug network activity and other associated information." *Id*. A warrant was issued, and a complete forensic examination of the electronic devices was conducted.

The examination revealed photographs of a methamphetamine cooking operation. In addition, the investigating officer opened various files containing photographs and videos depicting child pornography. *Id*. at 87. Based on this, a second warrant was sought, and issued, for the digital camera. No

evidence of illegal activity was discovered. A third search warrant then issued allowing the examination of all the electronic devices. This search revealed text messages relating to drug trafficking and photographs and videos depicting child pornography. *Id*. Applegate moved to suppress all evidence seized. The motion was denied.

On appeal, Applegate argued, in part, the officers engaged in an improper "general" search of his electronic devices because they "looked at all the files recovered from the devices." *Id*. at 90. Justice Nickell first reiterated the prohibition against "general" searches and stated:

> "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional" and the evidence excluded. *Horton v. California*, 496 U.S. 128, 140, 110 S. Ct. 2301, 2310, 110 L. Ed. 2d 112 (1990).
>
> The scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824, 102 S. Ct. 2157, 2172, 72 L. Ed. 2d 572 (1982). The *Ross* Court held that a lawful search is not "limited by the possibility that separate acts of entry or opening may be required to complete the search." *Id.* at 820-21, 102 S. Ct. at 2170-71. . . .
>
> . . . .
>
> An otherwise valid search is transformed into an impermissible general search only where the searching officers demonstrate a "flagrant disregard for the

-7-

limitations of a search warrant[.]" *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985).

*Id.* at 90-91 (quoting *Lundy v. Commonwealth*, 511 S.W.3d 398, 402-03 (Ky. App. 2017)).

Although the Court in *Applegate* noted that the search warrant was not "artfully drafted . . . [t]he devices were particularly described, the events preceding their seizure were set out in detail, and the evidence sought was specified." *Id.* at 91. In addition, it limited the scope of the search to evidence of Applegate's involvement in drug trafficking. Most importantly, the Court held the officer's actions in opening various files did not render the search "general" because "they were following the authorization contained in the search warrant." *Id.* The Court specifically relied on the reasonableness of the content being searched, noting:

> [I]t is clear officers were searching only for evidence tying Applegate to drug trafficking. In so doing, they uncovered clear, unequivocal and immediately apparent evidence of Applegate's possession of child pornography. This evidence was found in the same types of files which could reasonably have contained evidence related to drug trafficking. The officers properly limited their search in conformity with the warrant . . . .

*Id.*

The search warrant at issue in the instant case is arguably overbroad. Although it particularly describes the cell phone to be searched, it essentially allowed officers to search all the data on Tucker's cell phone. However, when

-8-

qualified by the limitations of the officer's affidavit, the necessary particularization restricts the search to evidence contained in the cell phone's "phonebook, call history (including received, dialed and missed calls), incoming, outgoing and drafts of text messages, IMEI/ESN/IMSI number, pictures and images, video, audio recordings, ringtones, phone details, memory card and SIM card," (R. at 94), "which tends to show that a crime has been committed or that a particular person has committed a crime." (R. at 91.) *See Rawls v. Commonwealth*, 434 S.W.3d 48, 60 (Ky. 2014) (officer affidavit may be incorporated into a search warrant to meet specificity requirements). The affidavit further limits the scope of the warrant to a search for evidence relating to the string of thefts committed between June 27 and July 7, 2017.

Accordingly, Tucker's claim that the search warrant contained no reference to a specific crime is a false one. Additionally, the fact that the investigating officers searched data not within the specified time range in which the warrant was based does not in and of itself render it a "general" search. *Applegate* stands for the proposition that, so long as the officers are searching files "which could reasonably have contained evidence related to [the crime on which the search warrant was based]," they are not exceeding the bounds of the warrant. *Applegate*, 577 S.W.3d at 91.[4]

---

[4] This rationale has been met with approval:

We conclude it was reasonable for the officers to search files that pre-dated the crimes which gave rise to the search warrant. The fact that the police suspected the crimes occurred between June 27 and July 7, 2017, does not mean discovered evidence showing "a crime has been committed or that a particular person [could have] committed a crime" in data that pre-dated the crime spree must be suppressed. It is reasonable, for example, that officers would discover evidence of preparation or identification of Tucker's associates in data pre-dating the actual crimes. And, Tucker had only owned the phone for approximately one month before the crime spree, which necessarily limited the search to a reasonable timeframe.

In conclusion, the search warrant was not overbroad and, therefore, did not lead to a "general" search of Tucker's cell phone.

---

[A] warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for [marijuana] would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*United States v. Ross*, 456 U.S. 798, 821, 102 S. Ct. 2157, 2171, 72 L. Ed. 2d 572 (1982) (footnote omitted). "[S]o long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence." *Applegate*, 577 S.W.3d at 91 (quoting *United States v. Richards*, 659 F.3d 527, 540 (6th Cir. 2011)).

## CONCLUSION

For the foregoing reasons, we affirm the Fayette Circuit Court's May 18, 2018 order denying Tucker's motion to suppress.

ALL CONCUR.


BRIEF FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky