RENDERED:  JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0203-MR

TANEISHA SHIRLEY                                                                APPELLANT

v.

APPEAL FROM MONROE CIRCUIT COURT
HONORABLE DAVID WILLIAMS, JUDGE
ACTION NO. 18-CR-00192

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING IN PART AND VACATING IN PART

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CETRULO, JUDGE:  Appellant Taneisha Shirley ("Shirley") appeals her

conviction alleging the trial court erred by allowing irrelevant and prejudicial

testimony, imposing a fine, and imposing court costs.  After review, we find the

trial court did not abuse its discretion as to the evidentiary matters, but, we vacate

the imposition of the fine and court costs.

## I.     FACTS AND BACKGROUND

In September 2018, police officers in Monroe County served a search warrant on a house trailer for drug-related activity.  At that time, Shirley was present in the trailer, along with five to seven other people.  Upon entering, police directed all of the occupants to lay on the floor.  In the trailer, police found marijuana and approximately 60 grams of methamphetamine; on Shirley's person, police found cash and digital scales.  During the search, the police witnessed Shirley appearing to chew something.  Thereafter, she became sick, vomited, and requested water.  The police called for medical assistance, and an ambulance transported Shirley to a nearby hospital.  Later that night, police apprehended Shirley at a different house with an IV still in her arm.

In November 2018, the Monroe County grand jury indicted Shirley on charges of first-degree trafficking in a controlled substance (methamphetamine); two counts of endangering the welfare of a minor; trafficking in marijuana; and possession of drug paraphernalia.

In November 2019, the parties had a pre-trial hearing that included discussion of Shirley's motion *in limine*.  During this hearing, counsel for Shirley asserted that the Commonwealth should not be permitted to argue during trial that she escaped or fled from police by leaving the hospital because she was not under arrest at that time.  Shirley also argued that because she was not charged with flight

or escape, the prejudicial effect of that testimony far outweighed its probative value. The Commonwealth disagreed, arguing that her leaving the hospital was evidence of flight; that flight is evidence of guilt; and should therefore be admissible.

After hearing arguments, the trial court stated in its "November 2019 ruling" that

> any mention of Miss Shirley leaving the hospital, I think that mention of Miss Shirley being taken to the hospital would be admissible because they saw her consuming [something]. I don't know whether the hospital has any authority to keep her in custody, whether she broke any law by leaving the hospital. There wasn't an officer there. She didn't escape or anything . . . and she's not charged [with escape]. I'm not going to allow that in.

In November 2021, after a long pandemic-related delay, Shirley's two-day trial commenced. During its opening statement, the Commonwealth said:

> Officer Hammer will tell you that EMTs were called due to Miss Shirley appearing to be sick from, they presumed, digesting [drugs]. The EMTs were called; they came; they took Miss Shirley to the hospital. Before being released from the hospital, Miss Shirley left of her own accord.

Shirley objected, and the parties approached for a bench conference. Shirley's counsel stated, "Your Honor, you ruled that any mention of Miss Shirley leaving the hospital was to be excluded as it was not relevant to this trial and that any prejudice outweighed the probative value of that. That was a motion *in limine* I filed in November 2019." The Commonwealth stated that it did not have

-3-

memory of that ruling and "if there was, it was in error." The trial court stated that it did not have memory of that ruling either. As a result, the trial court dismissed the jury in order for the parties to discuss the matter further.

Without the jury present, the trial court attempted to determine whether Shirley was arrested before she was taken to the hospital. Officer Hammer testified that, to the best of his memory, Shirley's handcuffs were removed before she was transported, and no officer accompanied her to the hospital. Additionally, prior to being transported, the police did not give Shirley a charging document.

After that brief testimony, the trial court gave the parties an opportunity for arguments. The Commonwealth stated that the fact that Shirley was found hiding with an IV still in her arm "shows an act of somebody who was guilty and that's [what] it's being offered for." Shirley's counsel argued that she was not under arrest prior to being transported; before leaving in the ambulance, her handcuffs were removed; she was not given a charging document; no officer accompanied her to the hospital; and there was no hospital discharge evidence. Moreover, she was not charged with escape, and such testimony was irrelevant and unreasonably prejudicial.

After arguments, the trial court stated:

Well, it appears to me that it is, that it might be, prejudicial
to say that when [the police] went to the hospital to check

-4-

on her she was gone. That's true. She was gone. And they looked for her later in the night and when they found her, she still had the IV in her. I want [the Commonwealth] to refrain from saying that she effectuated an escape or that she was not discharged . . . unless you got proof that she was not discharged or that she left without doctor's advice or tried to escape. So you don't need to pound on that too much. Ok? She was put in the ambulance; you got that. She was at the hospital; when they came to the hospital to look for her she was gone. Then they looked for her later, found her at her house, and she had an IV in her. But I don't want any conversation about "oh, she left the hospital and that indicates she was fleeing" because they did not properly effectuate this taking her into custody or have somebody with her. . . and we don't have any information about any [charging] orders that she had . . . . I don't want this case to be pounded on about how she escaped from the hospital because I think we will all admit that that part of the case was botched. The procedure was not proper. So I don't want you to reconstruct a proper handle on that when it wasn't. . . . I don't think that you've gone far enough that this can't be corrected because you said they went there. . . . Just don't say that's any kind of proof. Let's stick to what the evidence is gonna say. . . [to Shirley] I will grant your motion that there shall not be discussion about her escaping from the hospital or anything like that because there's not good evidence that she was properly in custody at the time.

The jury returned, and the trial resumed. The Commonwealth continued with its opening statement, saying Shirley appeared to be sick and an ambulance took her to the hospital. Later, police went to the hospital, but Shirley was not there; police located her that evening hiding in a bed between a mattress and a box spring with an IV still in her arm.

The trial continued and on day two, Officer Hammer testified that he was present at the initial home search. He stated Shirley requested water and medical attention, and an ambulance transported her to the hospital. He testified that later in the evening the hospital contacted police dispatch and, at this point, Shirley objected. At a bench conference, counsel for Shirley was concerned that the officer was testifying about previously excluded issues. The judge said:

> The issue was, is . . . we're not going to allow [the Commonwealth] to argue whether she escaped. They called over there to find out where she was, and she wasn't there. [Officer Hammer] testified that they turned her over to EMS. So, they've not alleged that she escaped custody or anything.

The Commonwealth said it would rephrase, and Officer Hammer resumed his testimony. He testified that Shirley was not at the hospital, but that he later found her at a residence on Fred Moody Road. The homeowner gave consent to a search; the officer found Shirley "attempting to hide from law enforcement" in a bed between the mattress and the box spring. Next, the officer testified that he took Shirley to the hospital to remove the IV from her arm and then on to the police department.

At the close of the trial, Shirley was convicted of first-degree trafficking of a controlled substance and possession of drug paraphernalia. She was sentenced to five years of imprisonment for the trafficking conviction; 12

months of imprisonment and a $500 fine for the misdemeanor paraphernalia conviction; and $210 in court costs.

## II.    ANALYSIS

Shirley appeals her conviction, alleging the trial court erred by (A) allowing the Commonwealth to present evidence of Shirley leaving the hospital and later being apprehended by law enforcement; (B) imposing fines for an indigent person contrary to Kentucky law; and (C) imposing court fees for an indigent person contrary to Kentucky law.

### A. Admission of Evidence

We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Shirley argues that the trial court, in its November 2019 ruling, determined that any evidence of Shirley leaving the hospital was not admissible. She argues that this initial ruling was correct but, when the Commonwealth ignored the ruling during its opening statement, the trial court then "changed its mind" and ruled that the police could testify that she left the hospital, but not that her hospital departure was an "escape." She argues that "[i]t was error for the

circuit court to revisit its earlier correct ruling, because the evidence was not relevant, and was more prejudicial than probative."

However, from our review of the record, the trial court *clarified* its earlier order, not *changed* its earlier order. In November 2019, the trial court stated:

> Any mention of Miss Shirley leaving the hospital, I think that mention of Miss Shirley being taken to the hospital would be admissible because they saw her consuming [something]. I don't know whether the hospital has any authority to keep her in custody, whether she broke any law by leaving the hospital. There wasn't an officer there. She didn't escape or anything . . . and she's not charged [with escape]. I'm not going to allow *that* in. (emphasis added)

"That" which the trial court was not allowing could have been either (1) "mention of Miss Shirley leaving the hospital" or (2) evidence of "escape." It is not clear from the record which inference the trial court intended. Even though the trial court technically ruled on the motion, clarity was later necessary because (1) the initial ruling left room for varying interpretations; (2) two years passed before the matter proceeded to trial; and (3) the ruling was never filed in writing and memories differed. Hence, immediately after the first objection during opening statements, the trial court aptly recessed the jury to discuss the matter again. After brief testimony and arguments, the trial court stated:

I want [the Commonwealth] to refrain from saying that she effectuated an escape or that she was not discharged. . . . She was put in the ambulance; you got that. She was at the hospital; when they came to the hospital to look for her she was gone. . . . But I don't want any conversation about "oh, she left the hospital and that indicates she was fleeing" because they did not properly effectuate this taking her into custody or have somebody with her . . . Let's stick to what the evidence is gonna say. . . [to Shirley] I will grant your motion that there shall not be discussion about her escaping from the hospital or anything like that because there's not good evidence that she was properly in custody at the time.

The trial court has broad discretion in determining admissibility of evidence. *Page v. Commonwealth*, 149 S.W.3d 416, 420 (Ky. 2004) (citation omitted). Evidence must be relevant to be admissible. *Dooley v. Commonwealth*, 626 S.W.3d 487, 493 (Ky. 2021); *see also* Kentucky Rule of Evidence ("KRE") 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. "This standard is powerfully inclusionary and is met upon a showing of minimal probativeness." *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015) (citation omitted). Of course, the trial court has discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of undue prejudice[.]" KRE 403.

Here, the trial court limited the Commonwealth to certain facts witnessed by law enforcement and determined fact-by-fact what was admissible.

The trial court ruled that police could testify about Shirley being taken to the hospital because they witnessed her chewing on something and then feeling ill. Shirley does not challenge that determination. The trial court did not allow the Commonwealth to argue that she "escaped" by leaving the hospital, because the police did not properly effectuate an arrest before or during her hospital stay. Again, Shirley does not challenge that ruling. However, Shirley challenges the testimony pertaining to flight (the admission of testimony that she left the hospital) and evasion[1] (testimony about the circumstances of her arrest, *i.e.*, being found between a mattress and box spring with an IV still in her arm). While evidence of other wrongs or acts (such as flight or evasion) is generally not admissible, it may be allowed "[i]f offered for some other purpose," or if the evidence is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b).

First, the evidence of flight was allowed only in a limited capacity: the police saw her chewing on something; she asked for medical assistance; she was transported to the hospital, but police found her somewhere other than the hospital later that day. The trial court did not allow testimony that her exit from

---

[1] Shirley was not charged with fleeing or evading law enforcement; we use the terms in a factual sense, not as a legal charge.

the hospital was without permission, or was an attempted escape. The limited flight testimony allowed is relevant because it has the tendency to make the existence of guilt more probable. *See Rodriguez v. Commonwealth*, 107 S.W.3d 215, 219 (Ky. 2003). Also, this flight testimony was offered "for some other purpose" – as an expression of a sense of guilt – thus making the evidence of flight admissible. *Id.*; *see also Day v. Commonwealth*, 361 S.W.3d 299, 303-04 (Ky. 2012). Moreover, this testimony was inextricably intertwined with other essential evidence; these permitted, limited facts were part of the bare-bone retelling of the events leading up to Shirley's arrest, and the probative value outweighed the prejudicial effect. *See Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012) (internal quotation marks and citation omitted) ("[W]here evidence is needed to provide a full presentation of the offense, or to complete the story of the crime, there is no reason to fragment the event by suppressing parts of the *res gestae*."). As such, here, the trial court did not abuse its discretion.

Second, the evidence of evasion was allowed only in a limited capacity as well: Shirley was not apprehended at the hospital; police searched at a local residence with permission of the homeowner; Shirley was found hiding in between a mattress and box spring with an IV in her arm. These details of her arrest were inextricably intertwined with the nature and place of her arrest. *Id.* Moreover, the evasion testimony was offered "for some other purpose" – as an

-11-

expression of a sense of guilt – thus making it admissible. *See Fugate v. Commonwealth*, 445 S.W.2d 675, 681 (Ky. 1969), *overruled on other grounds by Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983) ("We do not overlook the fact that flight and attempts at concealment are circumstantial evidence of guilt, because they suggest a guilty state of mind.") (citation omitted). The only testimony allowed outside the bare minimum facts was the statement that Shirley was "attempting to hide from law enforcement." However, that was not an unreasonable nor grossly prejudicial interpretation; it is unlikely the jury believed she laid *inside* the bed for a nap. Overall, this limited testimony of evasion was more probative than prejudicial. Here, again, the trial court did not abuse its discretion.

### B. Fines

The interpretation of statutes is a matter of law which we review *de novo*. *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998). We afford no deference to the statutory interpretations of the lower courts. *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky. App. 1998).

Kentucky Revised Statutes ("KRS") 534.040 provides guidelines as to fines that can be imposed for misdemeanors and violations. The statute includes two exceptions. First, subsection (2) excepts any offense defined outside the

Kentucky Penal Code,[2] where the fine has been "otherwise provided." KRS

534.040(2); *see also Commonwealth v. Moore*, 545 S.W.3d 848, 850 (Ky. 2018).

Second, subsection (4) allows a payment exemption for "any person determined by

the court to be indigent[.]" KRS 534.040(4). In situations where the offense is

defined outside the penal code, but the sentence is imposed under the penal code,

the indigency exception still applies. *Fultz v. Commonwealth*, 554 S.W.3d 385,

388 (Ky. App. 2018).

Here, the trial court imposed a $500 misdemeanor fine for possession

of drug paraphernalia, even though Shirley had previously been determined by the

trial court to be indigent. Despite this specific misdemeanor falling within KRS

Chapter 218A, which is outside the Kentucky Penal Code, the sentence is imposed

under the penal code,[3] and the indigency exemption of KRS 534.040(4) is still

applicable. *Fultz*, 554 S.W.3d at 388. Accordingly, we vacate the trial court's

imposition of the $500 fine for possession of drug paraphernalia.

**C. Court Costs**

Again, the interpretation of statutes is a matter of law which we

review *de novo*. *Bob Hook Chevrolet Isuzu, Inc.*, 983 S.W.2d at 490.

---

[2] KRS Chapters 500 through 534.

[3] KRS Chapter 218A does not state a penalty for violation of the statute, but merely refers to the general misdemeanor sentencing statute. KRS 534.040 pertains to fines for misdemeanor offenses, and KRS 532.090 pertains to sentences of imprisonment for misdemeanor offenses.

In January 2022, during the sentencing hearing, Shirley's counsel requested the trial court waive the court costs (and fines) due to her indigent status and pending incarceration; however, he was interrupted during his argument by the trial court who stated, "I'll give her some time after she gets out." The trial court went on to state that Shirley would be allowed to pay $50 each month beginning 30 days after her release from prison. According to the written judgment and sentence, filed in January 2022, Shirley was ordered to pay $210[4] in court costs through an installment payment plan, but that order did not specify the amount of the payments. *Judgment and Sentence*, Monroe Circuit Court, case no. 18-CR-00192 (Jan. 25, 2022).

On appeal, Shirley argues the trial court erred when it imposed court costs on her, a "poor person." The Commonwealth *agrees* that a "poor person" is exempt from paying court costs, but claims Shirley did not qualify because the trial court did not specifically make a finding that she was a "poor person" as defined by KRS 453.190(2).[5] However, that lack of a finding is the crux of the issue.

---

[4] Shirley's judgment and sentence was form-based. There is an "X" next to the box listing court costs as $210. However, KRS 23A.205 states that "[c]ourt costs for a criminal case in the Circuit Court shall be one hundred dollars ($100)." Therefore, the $210 court cost was statutorily impermissible.

[5] KRS 453.190(2) defines a "poor person" as "a person who has an income at or below one hundred percent (100%) on the sliding scale of indigency . . . or is unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing."

The assessment of court costs in a judgment fixing sentencing is illegal *only* if it orders a person adjudged to be "poor" to pay costs. Thus, while an appellate court may reverse court costs on appeal to rectify an illegal sentence, we will not go so far as to remand a facially-valid sentence to determine if there was in fact error. If a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal.

*Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014).

Here, prior to imposing court costs, the trial court found Shirley to be indigent[6] *and* Shirley's counsel appeared to be requesting "poor person" status when the trial court interrupted. Unfortunately, the trial court did not make a determination – one way or the other – as to Shirley's "poor person" status before imposing court costs.

Respectfully, the trial court should have determined whether "she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future" under KRS 23A.205(2). *See Sevier v. Commonwealth*, 434 S.W.3d 443, 471 n.106 (Ky. 2014) (quoting *Maynes v. Commonwealth*, 361

---

[6] In September 2018, Shirley was declared to be indigent by the trial court. Shirley stated that she had no job and no income.

-15-

S.W.3d 922, 930 (Ky. 2012) ("Without some reasonable basis for believing that the defendant can or will soon be able to pay, the imposition of court costs is indeed improper.")); *Butler v. Commonwealth*, 367 S.W.3d 609, 616 (Ky. App. 2012) (also quoting *Maynes*, 361 S.W.3d at 930).

Furthermore, KRS 534.020(2)(b) requires that all court costs be paid within one year of sentencing. At the sentencing hearing, the trial court stated, "She can pay [the fine and court costs] at fifty dollars a month starting thirty days after she's released." In light of Shirley's five-year prison sentence, it is highly unlikely[7] that she would be released within one year of the date of sentencing. *See Applegate v. Commonwealth*, 577 S.W.3d 83, 88 (Ky. App. 2018). ("We likewise agree the trial court erred in ordering Applegate to pay court costs in installments beginning sixty days after his release, as these necessarily could not be paid within one year of the date of sentencing as required by KRS 23A.205(3)."); *see also Jones v. Commonwealth*, 527 S.W.3d 820, 824 (Ky. App. 2017) (It was uncertain Jones would be released and able to pay the court costs within one year as required under the statute.). The imposition of court costs must be accomplished in conformity with KRS 534.020(2)(b).

---

[7] Shock probation or another form of early release are technically possible; however we must analyze the facts currently before us. Shirley was sentenced to five years to serve with parole eligibility *after* **twelve months** (20%) for the trafficking felony. 501 Kentucky Administrative Code ("KAR") 1:030 Section 3. She was also sentenced to 12 months to serve on the possession misdemeanor, but those sentences are to be served concurrently.

Therefore, the portion of the judgment and sentence imposing court costs is vacated.

## III.   CONCLUSION

Finding the trial court did not abuse its discretion on the presented evidentiary issues, we AFFIRM the judgment of conviction by the Monroe Circuit Court.  However, we VACATE the trial court's imposition of the $500 fine and $210 in court costs.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General
Frankfort, Kentucky

Rachel A. Wright
Assistant Solicitor General
Frankfort, Kentucky